No. 22-5028

IN THE
𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤
**FOR THE SIXTH CIRCUIT**

JEFFREY LICHTENSTEIN, et al.,
Plaintiffs-Appellants,

v.

TRE HARGETT, in his official capacity as Secretary of State for the State of
Tennessee, et al.,
Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**BRIEF OF PLAINTIFFS-APPELLANTS
JEFFREY LICHTENSTEIN, ET AL.**

Jon M. Greenbaum
Ezra Rosenberg
Pooja Chaudhuri
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW

Danielle Lang
Molly E. Danahy
Jonathan Diaz
CAMPAIGN LEGAL CENTER

William H. Harbison
Lisa Katherine Helton
Christopher C. Sabis
SHERRARD ROE VOIGT & HARBISON

*Counsel for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, counsel for Plaintiffs-Appellants Jeffrey Lichtenstein, Memphis and West Tennessee AFL-CIO Central Labor Council, Tennessee State Conference of the NAACP, Memphis A. Philip Randolph Institute, and Free Hearts certify that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation, and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

By: /s/ Danielle Lang ___
Attorney for Plaintiffs

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ........................................... vii

JURISDICTIONAL STATEMENT ...................................................... viii

STATEMENT OF ISSUES ....................................................................ix

INTRODUCTION ...............................................................................1

STATEMENT OF THE CASE.................................................................3

SUMMARY OF ARGUMENT ...............................................................7

STANDARD OF REVIEW ...................................................................11

ARGUMENT ...................................................................................11

I.   The District Court Failed to Properly Apply the Motion to Dismiss
     Standard ..............................................................................11

II.  The Complaint Plausibly Alleges that the Law Infringes Plaintiffs'
     Freedom of Speech Under the First Amendment.........................14

     A.  The Complaint Plausibly Alleges that the Prohibited Conduct Is
         Expressive........................................................................14

         1.  Courts Have Consistently Found Similar Conduct Expressive ..........16

         2.  The District Court's Analysis Misapplied the Standard for Motions
             to Dismiss and the Test for Expressive Conduct ................................22

     B.  The Complaint Plausibly Alleges that Proposed Distribution of
         Absentee Ballot Applications is Core Political Speech ..........................28

III. The Complaint Plausibly Alleges that the Law Infringes on Plaintiffs'
     Freedom of Association Rights ...................................................30

IV.  The Complaint Plausibly Alleges that the Law Cannot Survive *Meyer*'s
     Exacting Scrutiny .......................................................................33

V.   The Complaint Plausibly Pleads that the Law Also Fails Under the
     *Anderson-Burdick* Framework ...................................................35

    A.   The Complaint Plausibly Alleges that the Law Imposes More than
         Minimal Burden on First Amendment Rights .........................................38

    B.   The Complaint Plausibly Alleges that the Law is Not Justified by an
         Important State Interest ...........................................................................40

CONCLUSION ...........................................................................................42

CERTIFICATE OF COMPLIANCE WITH RULE 32 ...........................................44

CERTIFICATE OF SERVICE ........................................................................45

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............46

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...................................................*passim*

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................................................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..............................................11

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000)...............................................32

*Buckley v. American Constitutional Law Foundation, Inc.*,
    525 U.S. 182 (1999) .......................................................................18, 29, 33, 35

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................................................................30, 33

*Burdick v. Takushi*, 504 U.S. 428 (1992)..........................................................*passim*

*California Democratic Party v. Jones*, 530 U.S. 567 (2000) ...................................21

*Calvary Christian Center v. City of Fredericksburg, Va*.,
    832 F. Supp. 2d 635 (E.D. Va. 2011) ...............................................................27

*Citizens for Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008) ..............21, 28, 34

*Coley v. Lucas County, Ohio*, 799 F.3d 530 (6th Cir. 2015)............................40, 41

*Daunt v. Benson*, 956 F.3d 396 (6th Cir. 2020)........................................................36

*Daunt v. Benson*, 999 F.3d 299 (6th Cir. 2021)..................................................37, 41

*Democracy N.C. v. N.C. State Board of Elections*, No. 1:20CV457, 2020
    WL 4484063 (M.D.N.C. Aug. 4, 2020) ............................................................16

*DSCC v. Simon*, 2020 WL 4519785 (Minn. Dist. Ct. July 28, 2020).......................17

*Emily's List v. FEC*, 581 F.3d 1 (D.C. Cir. 2009) ...................................................30

*Feldman v. Arizona Secretary of State's Office*, 840 F.3d 1057 (9th Cir.
    2016) .............................................................................................................4, 19

*Green Party of Tennessee v. Hargett*, 767 F.3d 533 (6th Cir. 2014) ......................37

*Green Party of Tennessee v. Hargett*, 791 F.3d 684 (6th Cir. 2015) ................36, 37

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) ..............................11

*Heller v. Bedford Central School District,*
  665 F. App'x 49 (2d Cir. 2016) ..........................................................27

*Hernandez v. Woodard*, 714 F. Supp. 963 (N.D. Ill. 1989) ....................................38

*Knight v. Montgomery County, Tenn.*,
  470 F. Supp. 3d 760 (M.D. Tenn. 2020) ..........................................24

*Kohlman v. Village of Midlothian*, 833 F. Supp. 2d 922 (N.D. Ill. 2011) ..............24

*Laborers' Local 265 Pension Fund v. iShares Trust,*
  769 F.3d 399 (6th Cir. 2014) ......................................................11

*Lawrence v. Chabot*, 182 F. App'x 442 (6th Cir. 2006) .........................................27

*League of Women Voters of Florida v. Browning,*
  575 F. Supp. 2d 1298 (S.D. Fla. 2008) ...........................................19

*League of Women Voters of Florida v. Browning,*
  863 F. Supp. 2d 1155 (N.D. Fla. 2012) ....................................19, 31

*League of Women Voters of Florida v. Cobb,*
  447 F. Supp. 2d 1314 (S.D. Fla. 2006) ....................................19, 29

*League of Women Voters v. Hargett,*
  400 F. Supp. 3d 706 (M.D. Tenn. 2019) ..................................18, 20, 27, 29, 31

*McCullen v. Coakley*, 573 U.S. 464 (2014) .........................................................22

*McIntyre v. Ohio Election Commission*, 514 U.S. 334 (1995) ....................33, 34, 35

*Meyer v. Grant*, 486 U.S. 414 (1988) ................................................................*passim*

*National Association for Advancement of Colored People v.*
  *State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958) ........................................31

*Ohio Council 8 American Federation of State v. Husted,*
  814 F.3d 329 (6th Cir. 2016) ...........................................................37

*Potts v. City of Lafayette, Ind.*, 121 F.3d 1106 (7th Cir. 1997) ..............................24

*Priorities USA v. Nessel*, 462 F. Supp. 3d 792 (E.D. Mich. 2020) .........................17

*Project Vote v. Blackwell*, 455 F. Supp. 2d 694 (N.D. Ohio 2006) ...................19, 31

*Ruff v. Long,* 111 F. Supp. 3d 639 (E.D. Pa. 2015) .................................................24

v

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
  547 U.S. 47 (2006) ....................................................................................14

*Scicchitano v. Mt. Carmel Area School District*,
  2011 WL 4498842 (M.D. Pa. Sept. 27, 2011) ...................................24

*Spence v. Washington*, 418 U.S. 405 (1974) .............................................14, 26, 28

*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*,
  821 F.3d 780 (6th Cir. 2016) ...............................................................11

*Tenafly Eruv Association, Inc. v. Borough of Tenafly*,
  309 F.3d 144 (3d Cir. 2002) .................................................................26

*Tennessee State Conference of the NAACP v. Hargett*,
  2021 WL 4441262 (M.D. Tenn. Sept. 28, 2021) ............................18

*Texas v. Johnson*, 491 U.S. 397 (1989) .....................................................13, 14, 26

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue
  Shield*, 552 F.3d 430 (6th Cir. 2008) .................................................11

*VoteAmerica v. Schwab*, No. 21-2253,
  2021 WL 5918918 (D. Kan. Dec. 15, 2021) .............................16, 32

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ............................19

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015).................................25

**Statutes, Rules, and Constitutional Provisions**

Tenn. Code § 2-6-202(c)(3) ..................................................................3, 34

## STATEMENT REGARDING ORAL ARGUMENT

This case involves weighty considerations of law implicating the core First Amendment right to engage in political speech. Plaintiffs-Appellants therefore request oral argument.

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants (hereinafter "Plaintiffs") filed their Complaint on August 28, 2020, alleging violations of their First Amendment rights pursuant to 42 U.S.C. § 1983. Compl., RE 1, PageID# 11-12. The district court possessed subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1357. Defendants-Appellees (hereinafter "Defendants") moved to dismiss this action on December 11, 2020. Mot. to Dismiss, RE 46, PageID# 465. On December 7, 2021, the district court granted Defendants' motion and dismissed this action. Order, RE 57, PageID# 589. Plaintiffs timely appealed on January 6, 2022. Notice of Appeal, RE 59, PageID#591. Jurisdiction in this Court is proper under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Did the district court fail to apply the correct standard in adjudicating Defendants' motion to dismiss, by:

> a. failing to accept the allegations in Plaintiffs' complaint as true and construing the facts in the light most favorable to Defendants;

> b. considering facts not alleged in the complaint;

> c. speculating on other possible meanings that could be implied by Plaintiffs' conduct of distributing absentee ballot applications to support the district court's conclusion that the complaint does not allege expressive conduct protected by the First Amendment; and

> d. hypothesizing state interests not alleged in the complaint and then determining that those hypothetical interests outweigh any burden on Plaintiffs' First and Fourteenth Amendment rights?

2. Did the district court err in dismissing Plaintiffs' First Amendment claim that Tennessee's criminal prohibition on distributing absentee ballot applications violates their First Amendment right to engage in political speech and expression?

3. Did the district court err in dismissing Plaintiffs' First Amendment claim that Tennessee's criminal prohibition on distributing absentee ballot applications violates their First Amendment right to association?

4.      Did the district court err in ruling that Tennessee's criminal prohibition on distributing absentee ballot applications imposes only a minimal burden on Plaintiffs' First Amendment rights which is outweighed by an important state interest?

## INTRODUCTION

Every election cycle, candidates, political parties, civic engagement groups, volunteers, and everyday Americans alike engage in concerted political activity to engage their fellow citizens in the political arena, convince them to vote, and assist them in doing so. Colloquially referred to as "get out the vote" campaigns, these activities are undoubtedly expressive; indeed, they are core political speech. A central component of any effective "get out the vote" campaign is providing potential voters with the information and resources necessary to cast their ballots, including voter registration forms and, where relevant, the forms necessary to vote by mail. Yet, if a Tennessean provides her neighbor with an absentee ballot application as part of her effort to convince him to cast a ballot, she has committed a felony. This is so even though the State makes this application freely available online. The First Amendment does not countenance such criminalization of citizen engagement in the political process.

In this litigation, Plaintiffs, an individual and organizations that seek to distribute absentee ballot applications to voters, challenge the Tennessee law ("the Law") that criminalizes that conduct. In their Complaint, Plaintiffs set forth in detail why this conduct is expressive—i.e., it is intended to communicate, and likely to be received as communicating, the message of encouraging voters to vote by absentee

ballot—and specifically, that this expressive conduct is core political speech entitled to the highest protections under the First Amendment.

The district court acknowledged both Plaintiffs' intended message and that this message would plausibly be received by voters through the distribution of absentee ballot applications. Nonetheless, at the motion to dismiss stage, the district court speculated that there were other allegedly plausible messages that could be conveyed and received by the distribution of absentee ballot applications, including the bizarre notion that the message received might be "please throw this away." Based on that speculation, the district court found that Plaintiffs' proposed get-out-the-vote activity is not expressive and not entitled to First Amendment protection. In so doing, the district court denied Plaintiffs the factual inferences to which they were entitled and improperly drew inferences in favor of Defendants. The district court then compounded its error by going outside the record to ascertain Defendants' justification for the Law. Relying on this fatally flawed analysis, the district court dismissed Plaintiffs' pure First Amendment and *Anderson-Burdick* election regulation claims.

The district court's decision cannot be reconciled with the settled standards for adjudicating motions to dismiss. Nor is it grounded in the relevant First Amendment jurisprudence. Indeed, the district court's decision diverges from the consensus among courts that restrictions on voter engagement activity—from

petition circulation to voter registration to distribution of absentee ballot applications—inhibit expressive conduct and core political speech and are subject to exacting scrutiny—a burden Tennessee cannot overcome, certainly not at this stage of the litigation.

For these reasons, as more fully set forth below, this Court should reverse the district court's grant of Defendants' motion to dismiss and remand for further proceedings.

## STATEMENT OF THE CASE

Tennessee Code § 2-6-202(c)(3) provides that "[a] person who is not an employee of an election commission commits a Class E felony if such person gives an application for an absentee ballot to any person." On August 28, 2020, Plaintiffs brought this action challenging Tennessee's criminal prohibition on the distribution of absentee ballot applications as a violation of Plaintiffs' right to free speech and association under the First Amendment. Compl. ¶¶ 33-38, RE 1, PageID# 11-12.

As alleged in the Complaint, Plaintiffs are Tennessee-based organizations, and an individual, that are committed to engaging and organizing Tennesseans around making their voices heard through voting. Compl. ¶ 22, RE 1, PageID# 8; *see also id.* at ¶¶ 6-9, 11-12, PageID# 2-6. They have a long history of running and participating in civic engagement programs involving voter registration activities,

voter education, and voter turnout. Such efforts are at the core of Plaintiffs' political speech and advocacy activities. *Id.* at ¶ 23, PageID# 8.

As further alleged, in Plaintiffs' experience, voter engagement efforts are significantly more effective when they provide voters with all the information and requisite forms the voters might need to participate. *Id.* at ¶ 27, PageID# 9. For example, providing a voter registration application to a person is a much more effective way to ensure they register to vote than simply encouraging the person to register. For similar reasons, Plaintiffs seek to distribute absentee ballot applications as part of their get-out-the-vote activities. Plaintiffs allege, based on their experience, that providing an absentee ballot application to a voter is a much more effective way to encourage eligible voters to vote absentee than directing the voter to a website they may not be able to access, or to a form they may not be able to print. *Id.* Plaintiffs also allege that providing absentee ballot applications to eligible voters is necessary to ensure that those voters can exercise their right to vote absentee under Tennessee law. *Id.* at ¶ 28, PageID# 10. This is particularly true since some of Plaintiffs' members and other community members lack reliable access to a computer, a printer, or the Internet, and are thus unable to access the online application on their own. *Id.* Indeed, voters have specifically asked Plaintiffs to provide them with voting materials, including absentee ballot applications, for precisely this reason. *Id.*

Under the Law, however, Plaintiffs are subject to criminal prosecution if they distribute absentee ballot applications. Plaintiffs are prohibited, for example, from mailing to their members and other engaged voters information about the benefits of absentee voting accompanied by a blank absentee ballot application, which the voter can then complete and return to county election officials. *Id.* at ¶ 30, Page ID# 10. For groups like Organizational Plaintiffs MCLC and Tennessee NAACP, which boast memberships of approximately 20,000 affiliate union members and 10,000 statewide members, respectively, including an absentee ballot application in such mass mailings is crucial to effectively reaching and encouraging as many of their eligible members as possible to vote absentee. *Id.*

On August 31, 2020, Plaintiffs filed a motion for a preliminary injunction, seeking a court order that would allow them to distribute absentee ballot applications in the lead up to the November 2020 election. Mot. Prelim. Inj., RE 11, PageID# 43. The district court denied the motion on September 23, 2020. Mem. Op. and Order Denying Mot. for Prelim. Inj., RE 44, PageID# 398. Specifically, the district court found that Plaintiffs had not proved a likelihood of success on the merits in establishing that distribution of absentee ballots constitutes expressive conduct because Plaintiffs had not shown that there was a "great likelihood" that a person receiving an absentee ballot application from Plaintiffs would receive their intended message of "vote" or "voting is important" or "consider voting by mail." *Id.* at

5

PageID# 427-428. Instead, the court found that such a person could simply receive the message "please throw this away." *Id*. at PageID# 429-430. In so doing, the court acknowledged that "the issues is a fairly close one" and that it was "not predisposed to resolve close issues in favor of one side or the other." *Id*. at PageID# 427. The court further held that Plaintiffs failed to prove a likelihood of success in showing, even if the conduct is expressive, that it is core political speech entitled to strict scrutiny because the Law did not "in any way, shape or form hinder the ability to discuss candidates or issues—including any issue relating in any way to voting generally, voting absentee, or applying to vote absentee." *Id.* at Page ID# 441.

The district court went on to consider whether the Law withstands scrutiny under the *Anderson-Burdick* framework for evaluating election laws. The district court determined that the burdens imposed by the Law were "light" because the Law leaves open different avenues under which Plaintiffs may express their intended message, and because the Law applies broadly and therefore is not discriminatory. *Id*. at PageID# 446-447. The court then determined that the Law was justified by Tennessee's interests in preventing voter confusion and protecting the integrity of elections. *Id*. at PageID# 449-457. In so doing, the district court relied heavily on a declaration submitted by Defendants in opposition to the preliminary injunction. *Id*.

On December 11, 2020, Defendants filed a motion to dismiss Plaintiffs' Complaint for failure to state a claim. Mot. to Dismiss, RE 46, PageID# 465. The

6

district court granted the motion on December 7, 2021. Op. on Mot. to Dismiss, RE 56, PageID# 525. In so doing, the district court expressly incorporated its findings at the preliminary injunction stage into its decision on the motion to dismiss and held that (1) whether the conduct prohibited by the Law is expressive conduct is a pure question of law that can be decided at the motion to dismiss stage; (2) the prohibited conduct is not expressive for the reasons stated in its preliminary injunction opinion; (3) even if the prohibited conduct is expressive, it is not core political speech; (4) therefore strict scrutiny does not apply, but either *Anderson-Burdick* or rational basis review applies; and (5) for the same reasons set forth in its preliminary injunction opinion, the Law survives either "rational basis plus" under *Anderson-Burdick* or rational basis review. *Id.* at PageID# 531-32, 536-38.

Plaintiffs timely appealed. Notice of Appeal, RE 59, PageID# 591.

## SUMMARY OF ARGUMENT

Plaintiffs—organizations and an individual that engage in regular civic engagement activity—brought this action challenging a Tennessee law that makes it a felony to distribute absentee ballot applications to potential voters ("the Law"). In their complaint, Plaintiffs adequately plead that the Law prohibits them from engaging in expressive conduct and association. Further, Plaintiffs adequately plead that their expression qualifies as core political speech, where First Amendment protection is "at its zenith." *Meyer v. Grant*, 486 U.S. 414, 426 (1988). Specifically,

7

they plead that they wish to distribute absentee ballot applications as a means of urging their fellow citizens to vote and, where eligible, to take advantage of access to absentee voting. Plaintiffs plausibly allege a get-out-the-vote message that would be clear and discernible to their membership and communities but is prohibited by the Law. Plaintiffs also plausibly allege that the Law prohibits a means by which they could associate with others to make their voices heard. Finally, Plaintiffs plausibly allege that the Law—which criminalizes the distribution of a form that the State makes freely available on the internet and even when a potential voter requests it as part of an ongoing political conversation with Plaintiffs—is not tailored and cannot survive any meaningful scrutiny.

Yet, the district court dismissed Plaintiffs' complaint. In so doing, the district court failed to apply the motion to dismiss standard, deviated from the consensus among federal courts that Plaintiffs' proposed activity is protected expression, ignored Plaintiffs' freedom of association claim altogether, and improperly invoked conjecture to justify the Law.

*First,* the district court's decision improperly rested on and incorporated its findings from the preliminary injunction stage. As a result, the district court reversed the burden, refused to accept Plaintiffs' allegations as true, drew inferences against Plaintiffs, considered evidence outside the record, and deprived Plaintiffs of the opportunity to present evidence on the central question: whether Plaintiffs' get-out-

the-vote message would likely be understood by their audience. Applying the correct standard, Plaintiffs plausibly alleged the expressive nature of their proposed distribution of absentee ballot applications as well as the core political content of their speech.

*Second,* there is a wealth of precedent establishing that voter engagement activity—from petition circulation to voter registration to assistance with absentee ballot applications—is expressive and protected core political speech. The Supreme Court has repeatedly held that petition circulation—which, like absentee ballot application distribution, intertwines conduct pertaining to participation in elections with expression—is expressive and subject to the most stringent of First Amendment protections. Courts across the country have applied this precedent to voter registration activity as well. Most recently, two federal courts acknowledged that the First Amendment protects absentee ballot application distribution. The district court's finding—at the motion to dismiss stage and without full development of a record—that Plaintiffs' speech and conduct is not protected under the First Amendment departed from this substantial body of precedent.

*Third,* the district court's reasoning directly contradicts Supreme Court precedent. The Supreme Court has repeatedly explained that the availability of "other means to disseminate [Plaintiffs'] ideas" does not diminish First Amendment protection for Plaintiffs' chosen means of communication. *Meyer,* 486 U.S. at 424.

Yet, the district court engaged in precisely this type of faulty reasoning, relying on a laundry list of things that the Law does not prohibit Plaintiffs from doing to engage voters to find that the Law withstood constitutional scrutiny. Likewise, the Supreme Court has stressed the relevance of context in determining whether a plaintiff's expressive message is likely to be understood. Yet, the district court's analysis ignored the context of get-out-the-vote and indeed rested on an inference drawn against Plaintiffs that the recipient of an absentee ballot might think the intended message was "throw this away."

*Fourth*, Plaintiffs adequately pleaded that the Law infringes on their right to political association. Yet, the district court failed to separately address or analyze Plaintiffs' associational claims before dismissing their Complaint.

*Fifth*, the district court's analysis under the *Anderson-Burdick* balancing test suffered from the same flaws as its expressive conduct analysis. The *Anderson-Burdick* test for election regulation is fact-intensive. Nonetheless, the district court drew inferences against Plaintiffs in ruling that the Law's burdens on their rights are minimal. It compounded its error by engaging in conjecture and relying on evidence outside the Complaint to justify the law.

Plaintiffs' complaint plausibly alleges straightforward claims of violations of their rights to freedom of political expression and association under the First Amendment. This Court should reverse the dismissal of those claims.

10

## STANDARD OF REVIEW

This Court reviews a district court's grant of a motion to dismiss for failure to state a claim *de novo*. *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 785 (6th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I.    The District Court Failed to Properly Apply the Motion to Dismiss Standard.

At the motion to dismiss stage, it is well-established that a court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). The moving party has the burden of showing that no claim exists. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Dismissal at this stage is not proper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal citation omitted).

The district court failed to apply this standard. Rather than conducting any analysis of whether Plaintiffs' allegations were plausible, the district court's grant

of Defendant's motion to dismiss relied almost entirely on the merits analysis from its prior ruling on Plaintiffs' motion for a preliminary injunction. Indeed, the district court expressly incorporated its preliminary injunction opinion into its opinion on the motion to dismiss. RE 56, PageID# 536.

This was error. The district court's preliminary injunction ruling necessarily applied a different standard—where the Plaintiffs bore a substantial burden of proof—and relied on evidence that went well beyond the pleadings. RE 56, PageID# 538 (acknowledging that at the preliminary injunction stage, the district court concerned itself with "what [i]s 'likely'" and "involved a review of materials outside of the four corners of the Complaint"); *see also* RE 44, PageID# 404 ("A preliminary injunction should be granted only if the movant caries his burden of proving that the circumstances clearly demand it."); *id.* at PageID# 412 ("[T]he court first determines whether Plaintiffs have a substantial likelihood of success on the merits of their claim").

As established below, Plaintiffs' Complaint easily clears the bar for a motion to dismiss. Plaintiffs' Complaint plainly alleges plausible facts establishing that (10 the Law bars them from engaging in expressive conduct—the distribution of absentee ballot applications—which sends a clear and discernible message to Tennessee citizens that they should vote and, where eligible, take advantage of access to vote by mail; (2) such conduct is core political speech, which receives

heightened First Amendment scrutiny; and (3) the Law cannot be justified under the appropriate level of scrutiny.

The district court reached the opposite result only by ignoring the appropriate standard of review. As a result of the district court's heavy reliance on and incorporation of its preliminary injunction ruling, the motion to dismiss order rests on factual determinations contrary to Plaintiffs' allegations and draws inferences against Plaintiffs and in favor of Defendants. Thus, Defendants were not required to meet their burden at the motion to dismiss stage and Plaintiffs were deprived of the opportunity to develop a record to support their allegations.

This failure permeates the district court's entire opinion, from its determination as to whether Plaintiffs' distribution of absentee ballot applications carried the "intent to convey a particularized message . . . and the likelihood . . . that the message would be understood by those who viewed it," *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (internal citation omitted),  to whether the conduct "involve[d] the type of interactive communication concerning political change" so as to constitute core political speech, *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988), and whether the degree of burden on the right to vote occasioned by the Law was justified under *Anderson-Burdick*. Applying the appropriate standard, this Court should reverse.

**II.    The Complaint Plausibly Alleges that the Law Infringes Plaintiffs' Freedom of Speech Under the First Amendment.**

**A.    The Complaint Plausibly Alleges that the Prohibited Conduct Is Expressive.**

The threshold inquiry undertaken by the district court in adjudicating the motion was whether the conduct Plaintiffs seek to engage in—and that is prohibited by the Law—constitutes expressive conduct. Plaintiffs plausibly alleged that their distribution of absentee ballot applications, as part of their get out the vote activities, is expressive.

Conduct is expressive where "an intent to convey a particularized message [is] present, and the likelihood [is] great that the message [will] be understood by those who viewed it." *Texas*, 491 U.S. at 404. To meet this standard, Plaintiffs must plead that the "nature of [the] activity, combined with the factual context and environment in which it was undertaken" demonstrated that the "activity was sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[]." *Spence v. Washington*, 418 U.S. 405, 409-10 (1974).[1] In

---

[1] *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006), relied upon by the district court, does not lessen the importance of context in determining whether conduct is expressive. The issue in *Rumsfeld* was whether a law withholding federal funds from law schools that refuse to allow military recruiters on campus impinged upon the law schools' First Amendment right to voice opposition to the military. The Court ruled that a law school's refusal to allow military recruiters on campus was ambiguous, unless accompanied by speech, and therefore, not expressive: "An observer who sees military recruiters interviewing away from the law school has no way of knowing whether the law school is

their Complaint, Plaintiffs did just that, detailing how and why the distribution of absentee ballot applications to voters is an effective means of communicating their civic engagement message, specifically "to encourage eligible voters to vote absentee," and providing significant detail as to the context of their endeavor, including the need to communicate effectively with those who lack the resources or ability to obtain the applications themselves. Compl. ¶ 27, RE 1, PageID# 10.

Plaintiffs include an individual, Jeffrey Lichtenstein, and nonprofit civic engagement groups that seek to encourage eligible Tennesseans to not only vote but also to take advantage of their option to vote absentee. *Id.* ¶¶ 6-12 at PageID# 2-6. Plaintiffs routinely participate in voter engagement around elections, including voter registration drives, voter education campaigns, and voter turnout efforts. *Id.* Plaintiffs alleged that part of their civic engagement includes "discussing with voters the benefits of voting by mail, reminding eligible absentee voters about application and ballot submission deadlines and requirements, and following up with voters to ensure their ballots were received, cast and counted." *Id.* ¶ 26 at PageID# 9. As part of that political dialogue, Plaintiffs wish to provide potential voters with all the

---

expressing its disapproval of the military, all the law school's interview rooms are full, or the military recruiters decided for reasons of their own that they would rather interview someplace else." *Id.* at 66. The Court deemed it important that "[a] law school's recruiting services lack the expressive quality of a parade," *Id.* at 64, thus endorsing the concept of context. In any event, *Rumsfeld* was an appeal from a denial of a preliminary injunction, not as here, an appeal from a grant of a motion to dismiss, where all fair inferences must be drawn in Plaintiffs' favor.

information and materials they need to vote, including absentee ballot applications. *Id*. Indeed, Plaintiffs allege that they are most effective in engaging voters "when they are able to provide voters with all of the information and requisite forms they might need to register to vote, or to request to vote absentee." *Id.* ¶ 27 at PageID# 9. Because of the Law, however, Plaintiffs cannot distribute absentee ballot applications during in-person events or canvassing designed to persuade voters to participate; nor can they include applications in election-related mailings to their members and constituents.

## 1. Courts Have Consistently Found Similar Conduct Expressive.

Courts have consistently ruled that civic engagement and get-out-the-vote activities, including distribution of absentee ballot applications, constitute expressive conduct. *See VoteAmerica v. Schwab*, No. 21-2253, 2021 WL 5918918 (D. Kan. Dec. 15, 2021) (preliminarily enjoining restrictions on distribution of absentee ballot applications) ("HB 2332 . . . involves direct regulation of communication among private parties who are advocating for particular change— more voting by mail, especially in under-represented populations.");[2] *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20CV457, 2020 WL 4484063, at *50

---

[2] On February 25, 2022, the district court entered a stipulated order permanently enjoining Kansas's prohibition of distribution of absentee ballot application by out-of-state actors. Stipulated Order, RE 73, *VoteAmerica v. Schwab*, No. 2:21-cv-2253 (D. Kan. Feb. 25, 2022).

(M.D.N.C. Aug. 4, 2020) ("The court therefore finds that assisting voters in filling out a request form for an absentee ballot is 'expressive conduct' which implicates the First Amendment.");[3] *Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 812 (E.D. Mich. 2020) (holding that distributing absentee ballot applications, among other vote-by-mail operations, "necessarily involve[s] political communication and association"); *see also VoteAmerica v. Raffensperger*, No. 1:21-cv-1390 (N.D. Ga. Dec. 9, 2021) (holding that Plaintiffs plausibly alleged that restrictions on absentee ballot application distribution impinge protected speech); *DSCC v. Simon*, 2020 WL 4519785, at *29-30 (Minn. Dist. Ct. July 28, 2020) (holding that assisting voters in completing their absentee ballots is entitled to the same First Amendment protection as circulating ballot petitions and voter registration activities).[4]

---

[3] The district court sought to distinguish *Democracy N.C.* by suggesting that here, although they cannot distribute the forms, Plaintiffs can assist voters with completing their absentee ballot applications. It is axiomatic, however, that Plaintiffs cannot assist voters in filling out a form that voters are not in possession of. The first step in helping a voter complete a form is to give them the form at issue. The First Amendment does not countenance this fine slicing and dicing of First Amendment activity.

[4] At the preliminary injunction stage, the district court faulted Plaintiffs for not citing any cases "in which the act of distributing absentee-ballot application was treated as within the scope of the First Amendment." RE 44, PageID# 431. This assessment ignored *Priorities USA*, 462 F. Supp. 3d 792. Moreover, as the district court itself recognized, the lack of precise citation was because no other state in the nation has quite such a law. Since 2020, two states, Kansas and Georgia, have passed restrictions (although not complete prohibitions) on the distribution of absentee ballot applications. Both laws were challenged, and as cited above, the district court in Kansas enjoined the restrictions and the district court in Georgia denied the State's motion to dismiss the claims. The Kansas decision, *VoteAmerica v. Schwab*, was

These decisions are of a piece with a line of cases holding that a variety of interactive conduct with voters constitutes expressive conduct. The Supreme Court has twice addressed the stringent First Amendment protections for the expressive conduct of petition circulation. *See Meyer*, 486 U.S. at 421-22; *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999). And courts have repeatedly held that voter registration is similarly expressive.[5] In *League of Women Voters v. Hargett*, a district court preliminarily enjoined a Tennessee law that restricted "traditional voter registration drives," which, the court explained, "include central elements of expression and advocacy."[6] *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 721, 723-24 (M.D. Tenn. 2019) ("The court sees no reason that the First Amendment would treat [discussions about whether to register to vote] as

_____

initially issued prior to the decision below but the district court did not address it. The Georgia decision was issued two days later.

[5] The district court found these cases "inapplicable because they dealt with restrictions on interacting with potential voters" and held the challenged Law "does not restrict anyone from interacting with anyone about anything." RE 44, PageID# 433-33. In each of these cases, however, the speakers would have been free to interact with potential voters to their hearts' desire if they did not distribute and collect voter registration forms. Nonetheless, the courts recognized that the entire voter engagement activity of voter registration drives is covered by the First Amendment. Likewise, here, Plaintiffs seek to interact with potential voters and do so, in part, through the distribution and collection of absentee voter applications. That activity is covered by the First Amendment, and that the Law prohibits only part of it does not save it.

[6] After the district court granted the Plaintiffs' preliminary injunction, the Tennessee legislature repealed the challenged provisions of the law. *See Tennessee State Conference of the NAACP v. Hargett*, 2021 WL 4441262, at *1 (M.D. Tenn. Sept. 28, 2021).

somehow less deserving of protection than, for example, a discussion about whether or not there should be a ballot initiative about property taxes."); *see also Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 706 (N.D. Ohio 2006) (striking down restrictions on voter registration activity and noting "[t]he interactive nature of voter registration drives is obvious: they convey the message that participation in the political process through voting is important to a democratic society"); *League of Women Voters of Fla. v. Browning* (*Browning II*), 863 F. Supp. 2d 1155, 1158-59 (N.D. Fla. 2012) (holding laws regulating voter registration drives affect "core First Amendment activity"); *League of Women Voters of Fla. v. Browning* (*Browning I*), 575 F. Supp. 2d 1298, 1321 (S.D. Fla. 2008) ("Undoubtedly, Plaintiffs' interactions with prospective voters in connection with their solicitation of voter registration applications constitutes constitutionally protected activity."); *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1332-33 (S.D. Fla. 2006) (similar).

Even in *Voting for America, Inc. v. Steen*—an outlier case upholding Texas's restraints on voter registration drives—the majority acknowledged that the distribution of blank voter registration forms was expressive conduct protected by the First Amendment but held that the collection of completed forms for delivery to election officials was not. 732 F.3d 382, 389-90, 393 (5th Cir. 2013).[7] Though *Steen*

---

[7] The district court relied on *Steen*—as well as *Feldman v. Arizona Sec'y of State's Office*, 840 F.3d 1057, 1084 (9th Cir. 2016), which held that absentee ballot

stands for the proposition that once a voter registration or absentee ballot application is completed, the voter has been persuaded and entities are no longer engaged in speech when they collect completed forms, the *Steen* court nonetheless recognized that the distribution of forms is plainly speech. *Id.*; *cf. League of Women Voters*, 400 F.Supp.3d at 720 (rejecting the *Steen* majority's attempt to "slic[e] and dic[e]" the plaintiffs' protected speech and associational activity).

The district court acknowledged that "distribution of absentee-ballot applications is in [Plaintiffs'] view a *means* of getting out their *message*," but discounted the Law's prohibition of that means because "so far as the Law is concerned, it can be conveyed in every single way imaginable except by distributing absentee-ballot applications." Mem. Op. and Order Denying Prelim. Inj., RE 44, PageID# 437. However, Plaintiffs' distribution of absentee ballot applications is no less protected simply "because other avenues of expression remain open to [them]" or "because the State has the authority to impose limitations on [absentee voting]." *Meyer*, 486 U.S. at 424 (holding that the activity of circulating petitions for or against a proposal was expressive conduct). In *Meyer*, the Supreme Court rejected precisely this rationale:

> That appellees remain free to employ other means to disseminate their ideas does not take their speech through petition circulators outside the bounds of First Amendment protection. Colorado's prohibition of paid

*collection* is not expressive conduct. RE 44, PageID# 430-31. Here, it is only the distribution of absentee ballot applications—not their collection—that is at issue.

petition circulators restricts access to the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication. That it leaves open "more burdensome" avenues of communication, does not relieve its burden on First Amendment expression.

*Meyer*, 486 U.S. at 424.[8]

In sum, "the First Amendment protects appellees' right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.*; *see also Citizens for Tax Reform v. Deters*, 518 F.3d 375, 386 (6th Cir. 2008) (same); *California Democratic Party v. Jones*, 530 U.S. 567 (2000) ("We have consistently refused to overlook an unconstitutional restriction upon some First Amendment activity simply because it leaves other First Amendment activity unimpaired."). In other words, the Supreme Court has expressly rejected the slicing and dicing of protected First Amendment activity that the district court engaged in below.[9]

---

[8] The district court's lengthy recitation of "a list of things that the Law does not prohibit any person or organization ('speaker') from doing"—including "[p]osting on a website a link to an election commission website where an absentee-ballot application can be found"—is precisely the type of rationalizing that *Meyer* rejects. RE 44, PageID# 423-24.

[9] In *Meyer*, the Supreme Court recognized that its holding "follows from [its] recognition . . . that the solicitation of charitable contributions often involves speech protected by the First Amendment and that any attempt to regulate solicitation would necessarily infringe that speech." 486 U.S. at 422 n.5 (citing *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980)). Although solicitation of funds alone might not be protected, it is "characteristically intertwined" with First Amendment protected speech. *Id.*

The district court's insistence that Plaintiffs can state their support for absentee voting by other means "misses the point." *McCullen v. Coakley*, 573 U.S. 464, 489 (2014). Plaintiffs wish to inform voters of their absentee voting options *and* "provide help in pursuing them" and "believe that they can accomplish this objective only" by interacting with voters directly and providing them with the means to vote absentee. *Id.* (holding that "[w]hen the government makes it more difficult to engage in these modes of [one-to-one] communication, it imposes an especially significant First Amendment burden") (dismissing argument that buffer zones around abortion clinics are constitutional because protesters could be heard chanting from outside those zones).

### 2.    The District Court's Analysis Misapplied the Standard for Motions to Dismiss and the Test for Expressive Conduct.

The district court accepted Plaintiffs' allegations that they "have an intent to convey, via distribution of absentee-ballot applications, a particularized message." RE 44, PageID# 427. Yet, relying wholly on its prior decision on Plaintiffs' motion for a preliminary injunction, the district court went on to conclude that the Law "does not prohibit any conduct that is expressive," Op. on Mot. to Dismiss, RE 56, PageID# 536,[10] because there is not, in the district court's view, "'a great likelihood' that

---

[10] RE 56, PageID# 536 ("And as the Court explained at considerable length in its Preliminary Injunction Opinion, the Law simply does not prohibit any conduct that is expressive. . . . For reasons of judicial efficiency, the Court will not repeat those reasons here, but fully incorporates those reasons in this Opinion. Accordingly, the

someone to whom Plaintiffs might distribute an application for an absentee ballot . . . would understand these messages from the act of distribution itself." RE 44, PageID# 427. Instead, the district court opined:

> True, the observer conceivably could speculate that the distributor intends to convey the message(s) Plaintiffs indicate they wish to convey. But the observer could also speculate that the message is "please throw this away," or "what is this?" or "I don't understand this piece of paper and was hoping you could explain it to me," or "here is the application that the district court found in Case No. 374 to be an application for an absentee ballot, rather than a request for an application for an absentee ballot."

RE 44, PageID# 427, 429-30.

In reaching this conclusion, the district court committed numerous errors.

*First*, the district court relied on the premise that the determination as to whether conduct is expressive is ultimately a "question of law" to disregard nearly all of Plaintiffs' factual allegations (outside of whether their proposed conduct is indeed prohibited by the Law) that are relevant to that determination. RE 56, PageID# 533 ("No further factual development is required for the Court to determine the nature or scope of Plaintiffs' proposed conduct at issue or whether (as a matter of law) the Law unconstitutionally prevents Plaintiffs from engaging in such conduct").[11] On this basis, the district court expressly stated that it would not take

---

Court concludes that the Law does not restrict expressive conduct and thus is not within the scope of the First Amendment.").

[11] The cases cited by the district court do not suggest that the standard for adjudicating a motion to dismiss is affected by the fact that the ultimate decision on

Plaintiffs' allegations "as true for purposes of ruling on Defendants' Motion," and instead treated all of their allegations related to the expressive content of their conduct as "legal conclusions." Even if an ultimate issue is one of law, that does not, of course, permit a court at the motion to dismiss stage to disregard all Plaintiffs' relevant factual allegations as legal conclusions.

*Second*, by relying on its findings rendered in the context of a preliminary injunction motion, the district court effectively and erroneously shifted the burden from the Defendants on their motion to dismiss—where it rightfully belonged—to Plaintiffs—where it decidedly did not. *See supra* Part I.

---

whether conduct is expressive is a question of law. Indeed, most of the cited cases are not Rule 12(b)(6) cases. *See Ruff v. Long,* 111 F.Supp.3d 639, 645 (E.D. Pa. 2015) (granting summary judgment against plaintiff who claimed that his carrying three hidden weapons into a police station was an expression of his position against guns); *Scicchitano v. Mt. Carmel Area Sch. Dist.*, No. 4:09CV638, 2011 WL 4498842, at *9 (M.D. Pa. Sept. 27, 2011)(review of trial judgment against plaintiffs who claimed that their wearing clothes in violation of school's dress code was an expression of their opposition to the dress code); *Kohlman v. Vill. of Midlothian*, 833 F. Supp. 2d 922, 935 (N.D. Ill. 2011) (granting summary judgment against plaintiff because plaintiff did not identify any particular message he intended to convey with his conduct); *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1110-11 (7th Cir. 1997) (granting summary judgment in a case concerning the right to record public events, having nothing to do with expressive conduct). Indeed, the only case cited by the district court for this proposition that concerned a motion to dismiss was its own prior decision where it ruled that the conduct in question, livestreaming, *was* expressive conduct. *Knight v. Montgomery Cty., Tenn*., 470 F. Supp. 3d 760, 768 n.5 (M.D. Tenn. 2020).

*Third*, by incorporating its findings on the preliminary injunction motion into its decision on the motion to dismiss, the court necessarily considered evidence that went well beyond the pleadings. RE 56, PageID# 538 (acknowledging that at the preliminary injunction stage, the district court concerned itself with "a review of materials outside of the four corners of the Complaint").

*Fourth*, by positing an alternative "plausible" meaning—*i.e.* "please throw this away," RE 44 at PageID# 429, 434—that a person might glean from Plaintiffs' distribution of absentee ballot applications, the district court turned the plausibility standard on its head. It is certainly a *plausible*, *reasonable* inference that recipients of absentee ballot applications will understand Plaintiffs' voter encouragement message. That the court itself characterized its expressive conduct determination as a "fairly close one" and acknowledged that it "would be hubristic to assert that [the court] can pronounce the undeniably 'right' answer on this issue," *id.* at PageID# 428, should have ended the discussion.

The district court's reliance on its own speculation of an alternative plausible universe failed to "draw all reasonable inferences in favor of the [plaintiff]." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). It was not "draw[ing] all reasonable inferences in favor of the Plaintiff" for the district court to conclude, for example, that "distribution of blank voter registration forms . . . would certainly be more inherently expressive than distribution of absentee-ballot applications," RE 44,

PageID# 431-32, let alone for the district court to suggest that the likely message heard is "please throw this away."

*Fifth*, the district court's analysis fails to comport with the governing precedent on expressive conduct. The district court reached its conclusion that distribution of absentee ballot applications is not "inherently expressive" by divorcing the prohibited activity from its context. Supreme Court precedent mandates the opposite. *See, e.g., Texas*, 491 U.S. at 405 ("We have not automatically concluded, however, that any action taken with respect to our flag is expressive. Instead, in characterizing such action for First Amendment purposes, we have considered the context in which it occurred."); *see also Spence*, 418 U.S. at 410 ("Moreover, the context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol."); *id.* ("A flag bearing a peace symbol and displayed upside down by a student today might be interpreted as nothing more than bizarre behavior, but it would have been difficult for the great majority of citizens to miss the drift of appellant's point at the time that he made it.").

Whether conduct is considered expressive "is a fact-sensitive, context-dependent inquiry." *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 161

(3d Cir. 2002).[12] Plaintiffs were, at minimum, entitled to the opportunity to build a record and show "[a]s a matter of simple behavioral fact," the distribution of absentee ballot applications as part and parcel of a voter engagement strategy "is intertwined with speech and association." *League of Women Voters*, 400 F. Supp. 3d at 720.[13]

The district court fails to explain why Plaintiffs' allegations—that recipients of absentee ballot applications *from* civic engagement groups *during* an election cycle would likely understand their message encouraging participation in the electoral process—are not plausible. Properly framed, at the motion to dismiss stage,

---

[12] The examples cited by the district court of First Amendment claims demonstrating no need for factual inquiry serve only to prove Plaintiffs' point, because they are so far removed from the plausible allegations in this case. *See Lawrence v. Chabot*, 182 F. App'x 442, 453 (6th Cir. 2006) (holding claim that state bar licensing procedure that suspends application process until disposition of criminal charges against applicant violates First Amendment is "patently frivolous"); *Heller v. Bedford Cent. Sch. Dist.*, 665 F. App'x 49, 53 (2d Cir. 2016) (affirming dismissal of claim that purchase of a gun was expressive conduct protected by First Amendment, when no one other than the gun shop employee noticed the transaction); *Calvary Christian Ctr. v. City of Fredericksburg, Va.*, 832 F. Supp. 2d 635, 643 (E.D. Va. 2011) (rejection of claim that denial of a permit to allow operation of school for disabled children on church premises impinged expressive speech, because there was no allegation of particularized message intended or received).

[13] In their opposition to Defendants' motion, Plaintiffs explained that they "intend[ed] to develop a record that [would] persuade the Court that their conduct is inherently expressive, including through testimony and other evidence gathered from those who regularly and professionally conduct voter engagement and thus are well-situated to explain from experience how different voter engagement messages are received in the field." Pls. Opp. to Mot. to Dismiss, RE 50, PageID# 494. The district court did not address this argument.

Plaintiffs have adequately shown both "[a]n intent to convey a particularized message" and "*in the surrounding circumstances* the likelihood [is] great that the message [will] be understood by those who view[] it." *Spence*, 418 U.S. at 411.

### B.   The Complaint Plausibly Alleges that Proposed Distribution of Absentee Ballot Applications is Core Political Speech.

Not only is the distribution of absentee ballot applications expressive conduct, it is of the sort entitled to the greatest protections under our laws. Plaintiffs' civic engagement activities—of which their proposed distribution of absentee ballot applications is part and parcel—"involve[] the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 486 U.S. at 421-22.

In *Meyer*, the Supreme Court held that circulation of initiative petitions for signatures is expressive, core political speech, explaining:

> The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change. Although a petition circulator may not have to persuade potential signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate. This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it.

*Id. at* 421; *see also Citizens for Tax Reform*, 518 F.3d at 387 (applying *Meyer* to a law limiting compensation of signature gatherers to payment by time worked). The same reasoning that protects petition circulators' speech as core political speech

applies at other stages of the electoral process as well. *See*, *e.g., League of Women Voters*, 400 F. Supp. 3d at 723 (explaining that "the creation of a new voter *is* a political change"); *League of Women Voters of Fla.*, 447 F. Supp. 2d at 1332–33 (noting laws restricting third-party voter engagement activity "reduce[] the total quantum of speech" because through that activity, civic organizations like Plaintiffs "persuade others to vote, educate potential voters about upcoming political issues, communicate their political support for particular issues, and otherwise enlist likeminded citizens in promoting shared political, economic, and social positions").

Likewise, civic engagement and education on absentee voting "of necessity involves both the expression of a desire for [an engaged electorate] and a discussion of the merits of [voting by mail]." *Meyer*, 486 U.S. at 421. To succeed in their mission of engaging absentee voters, an advocate will have to persuade a potential voter that participation is worthwhile and that absentee voting is adequately accessible. "First Amendment protection for such interaction . . . is 'at its zenith.'" *Am. Constitutional Law Found.*, 525 U.S. at 187 (quoting *Meyer,* 486 U.S. at 425). As such, a federal district court in Kansas recently enjoined a more limited restriction on absentee ballot distribution and, in so doing, acknowledged the core political message the law restricted:

> HB 2332 [the Kansas law] goes beyond invoking the State's constitutional authority to regulate election processes and involves direct regulation of communication among private parties who are

advocating for particular change – more voting by mail, especially in under-represented populations.

*Id.* p. 35 (citing *Meyer*).

It is thus uncontroversial that get-out-the-vote activity constitutes core political speech entitled to the most stringent First Amendment protections.[14] This activity necessarily intertwines civic engagement speech with conduct—such as distribution of voter registration forms, petition signatures, absentee ballot applications, or other materials. The district court's attempt to segregate absentee ballot application distribution from this traditional First Amendment protected activity fails. This Court should follow the otherwise unanimous opinions of federal courts that hold this activity is not only expressive, but core political speech, entitled and protected by the First Amendment and reverse the district court's finding otherwise.

## III. The Complaint Plausibly Alleges that the Law Infringes on Plaintiffs' Freedom of Association Rights.

"The First Amendment protects political association as well as political expression." *Buckley v. Valeo*, 424 U.S. 1, 15 (1976); *see also Nat'l Ass'n for*

---

[14] Indeed, courts have routinely afforded the money spent on this type of activity stringent First Amendment protection. *See Emily's List v. FEC*, 581 F.3d 1 (D.C. Cir. 2009) ("[T]he Court has afforded stronger protection to expenditures by citizens and groups (for example, for advertisements, get-out-the-vote efforts, and voter registration activities) than it has provided to their contributions to candidates or parties."). If restrictions on the funding of this activity are subject to strict scrutiny, certainly the activity *itself* must be protected as well.

*Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) ("It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech."). "[A]nd state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny. *Patterson*, 357 U.S. at 460–61. Courts have routinely recognized that civic engagement activity implicates *both* freedom of speech and freedom of association. *See, e.g., League of Women Voters*, 400 F. Supp. 3d at 723–24 (holding that the "'entire voter registration activity' implicates the 'freedom of the plaintiffs to associate with others for the advancement of common beliefs"); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 706 (N.D. Ohio 2006) (holding that restrictions on distribution and collection of voter registration forms "implicate[d] a number of both expressive *and associational* rights which are protected by the First Amendment" (emphasis added)); *Browning II*, 863 F. Supp. 2d at 1158 ("[T]he plaintiffs wish to speak and act collectively with others, implicating the First Amendment right of association.").

In addition to the Law's infringement on Plaintiffs' freedom of expression, Plaintiffs adequately alleged that the Law severely impinges their freedom of association. Each Plaintiff "engage[s] in association for the advancement of [their] beliefs and ideas," *Patterson*, 357 U.S. at 461; in particular, their belief that all

Tennesseans should participate in the political process, even when, for example, they are unable to vote in person. Indeed, Plaintiffs MCLC, TN NAACP, and MAPRI are all membership—*i.e.* associational—organizations that bring together individual Tennesseans to further their missions. And Plaintiffs specifically alleged that the Law infringes on their freedom of association by limiting both the volunteer activities of their members and Plaintiffs' means to engage and associate with their organizational members and community members to advance their core belief in civic participation. *See* Compl. ¶ 26-32, 38, RE 1, PageID# 10-12; *see also VoteAmerica v. Schwab*, No. CV 21-2253-KHV, 2021 WL 5918918, at *7 (D. Kan. Dec. 15, 2021) ("The freedom of association encompasses not only the right to associate with others but also the right to choose how one associates with others.") (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653 (2000) ("As we give deference to an association's assertions regarding the nature of its expression, we must also give deference to an association's view of what would impair its expression.")).

Despite these particularized averments, the district court failed to separately address or analyze the Plaintiffs' associational claims in its order granting the motion to dismiss or its (incorporated) order denying Plaintiffs' motion for preliminary injunction. *See* RE 44; RE 56. Similarly, Defendants failed to specifically address Plaintiffs' associational claims in their motion to dismiss. *See* RE 47; *see also* Pls.

Opp. to Mot. to Dismiss, RE 50, PageID# 495 ("Given that Defendants do not even seek to address separately Plaintiffs' associational rights, their motion is due to be denied for that reason as well." (internal citation omitted)). The district court did not make any separate findings that Plaintiff failed to plausibly allege that the Law infringes on their associational activity. As such, the district court's grant of the motion to dismiss should be reversed.

## IV.   The Complaint Plausibly Alleges that the Law Cannot Survive *Meyer*'s Exacting Scrutiny.

Because the Law directly restricts Plaintiffs' freedom of expression and association, this Court must apply the exacting scrutiny applied in *Meyer*. 486 U.S. at 420 ("We fully agree with the Court of Appeals' conclusion that this case involves a limitation on political expression subject to exacting scrutiny."); *see also Am. Constitutional Law Found.*, 525 U.S. at 204 (applying "exacting scrutiny" to petition circulation restrictions); *Valeo*, 424 U.S. at 44 (applying "exacting scrutiny" to campaign finance regulation); *McIntyre v. Ohio Election Comm'n*, 514 U.S. 334 (1995) (applying "exacting scrutiny" to the distribution of anonymous campaign leaflets).

Under exacting scrutiny, this Court may uphold "the restriction only if it is narrowly tailored to serve an overriding state interest." *McIntyre*, 514 U.S. at 347.[15]

---

[15] The district court discussed below, at length, the case law describing "exacting scrutiny" and whether it differs appreciably from "strict scrutiny." The district court

Because Tennessee Code § 2-6-202(c)(3) burdens core political speech, First Amendment protection is "at its zenith" and the burden the State "must overcome to justify this criminal law is well-nigh insurmountable." *Meyer*, 486 U.S. at 425.

The Law cannot withstand this exacting scrutiny and certainly cannot do so at the motion to dismiss stage. Tennessee has asserted that the Law relates to "the State's interests of preventing voter confusion and protecting the integrity of the electoral process." RE 47, PageID# 480. But Plaintiffs have plausibly alleged that the Law—which makes it a felony to distribute a publicly available form that the State publishes online—does not further these interests at all, and certainly does not do so in a narrowly tailored fashion. Compl., ¶ 37, RE 1, PageID# 12. At this stage, the Court is bound to accept those allegations. Indeed, given the sweeping breadth of the restriction—unparalleled in any other State—Tennessee's burden to meet the exacting scrutiny standard will be "well-nigh insurmountable." *Meyer*, 486 U.S. at 425. In any event, that inquiry cannot be resolved at the motion to dismiss stage.

---

concluded that it does not. RE 44, PageID# 416 (noting that in *McIntyre*, the Supreme Court equated exacting scrutiny and strict scrutiny); *see also McIntyre*, 514 U.S. at 346 n.10 ("In *Meyer*, we unanimously applied *strict scrutiny* to invalidate an election-related law."). This circuit has previously described this "exacting scrutiny" as invoking a "sliding scale." *Citizens for Tax Reform*, 518 F.3d at 383 (holding petition signature gathering regulation unconstitutional). Regardless, as shown by this Court's analysis in *Citizens for Tax Reform*, exacting scrutiny is undeniably more stringent than either rational basis or the typical application of *Anderson-Burdick*. Since the district court failed to apply any form of "exacting scrutiny," this Court need not address its precise contours here.

## V.     The Complaint Plausibly Pleads that the Law Also Fails Under the *Anderson-Burdick* Framework.

As an alternative to applying the *Meyer* test or rational basis, the court also analyzed Plaintiffs' claim under the *Anderson-Burdick* framework. The *Anderson-Burdick* framework should not apply here. While many election regulations are analyzed under the *Anderson-Burdick* framework—wherein a "state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions," *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)—the Supreme Court has limited this more malleable framework to laws that only "control the mechanics of the electoral process." *McIntyre*, 514 U.S. at 345; *id.* at 341 (rejecting Ohio's argument that its prohibition on anonymous campaign literature was a "reasonable regulation of the electoral process"). Even when a regulation involves the electoral process, the Court applies exacting scrutiny where it "burdens core political speech." *Id.* at 347; *see also Am. Constitutional Law Found.*, 525 U.S. at 207 (Thomas, J., concurring) ("When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny and required that the legislation be narrowly tailored to serve a compelling governmental interest."). Thus, in cases where Plaintiffs properly allege direct burdens on core political speech—as here, *see supra*—a more stringent standard than the *Anderson-Burdick* framework applies.

However, at minimum, Plaintiffs' claim would be evaluated under the *Anderson-Burdick* framework, because the felony prohibition on distribution of absentee ballots constitutes an "election law." *Daunt v. Benson*, 956 F.3d 396, 406-407 (6th Cir. 2020) ("At bottom, the *Anderson-Burdick* framework is used for evaluating state election laws.") (quotation marks omitted); *see also, e.g.*, RE 44, PageID# 421-22, 444-46. This is because laws that structure elections "inevitably affect[]—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson*, 460 U.S. at 788. Like its traditional First Amendment analysis, the district court's dismissal under the *Anderson-Burdick* framework was erroneous.

Under the *Anderson-Burdick* framework, courts "must weigh the character and magnitude of the asserted injury," *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Next, courts must identify and evaluate the "precise interests put forward by the State as justifications for the burden imposed by its rule." *Id*. Finally, courts must determine the legitimacy and strength of each of those interests and consider the extent to which those interests make it necessary to burden the plaintiff's rights. *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 693 (6th Cir. 2015).

The "rigorousness of [the court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. Thus, if a challenged

regulation imposes "severe restrictions" on a plaintiff's constitutional rights, it will survive only if "narrowly drawn to advance a state interest of compelling importance." *Id.* (quotation marks omitted). Where the challenged regulation is "minimally burdensome and nondiscriminatory" it will be subjected to a "less-searching examination closer to rational basis," *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016), and will survive "if the state can identify important regulatory interests to justify it," *Green Party of Tenn.*, 791 F.3d at 693 (quotation marks omitted).[16] And where the regulation falls "somewhere in between, courts will weigh the burden on the plaintiffs against the state's asserted interest and chosen means of pursuing it." *Id*. (quotation marks omitted).

"Whether a voting regulation imposes a severe burden is a question with both legal and factual dimensions." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 547 (6th Cir. 2014). Because the process of weighing a plaintiffs' alleged burdens against the state's asserted interests is typically a fact-intensive one, "many cases will require development beyond the pleadings." *Daunt v. Benson*, 999 F.3d 299, 313 n.4 (6th Cir. 2021); *id.* at 313 (finding that "in many if not most cases" *Anderson-Burdick* requires a fact-intensive inquiry).

---

[16] The district court refers to the lowest level of scrutiny under *Anderson-Burdick* as "rational-basis 'plus'" because it requires the state's interest to be "important" and rather than simply "legitimate." RE 56, PageID# 538 n.6.

## A.    The Complaint Plausibly Alleges that the Law Imposes More than Minimal Burden on First Amendment Rights.

For the same reasons set forth in connection with their expressive conduct and freedom of association claims, Plaintiffs plausibly alleged that the felony prohibition on the distribution of absentee ballot applications imposes at least a moderate burden on their First Amendment rights. These allegations, taken as true and with all inferences made in favor of Plaintiffs, are certainly sufficient to show that the Law imposes more than a "minimal" burden on the speech and associational rights of Plaintiffs and their members. *See, e.g., Hernandez v. Woodard*, 714 F. Supp. 963, 973 (N.D. Ill. 1989) ("Where groups, formal or informal, seek to advance their goals through the electoral process, regulations preventing their members from [engaging absentee voters] impair their ability effectively to organize and make their voices heard."). Indeed, neither Defendants nor the district court dispute that the law burdens Plaintiffs' efforts to engage voters and assist their members and communities in exercising the fundamental right to vote. RE 44, Page ID# 39 ("The Court does not deny that the Law might interfere to some extent with how Plaintiffs might like to encourage voting or that it poses an obstacle to their ultimate goal of getting absentee ballot applications submitted."); RE 47, PageID# 471 (describing distributing absentee ballot applications as a "key part of [Plaintiffs'] voter engagement").

Plaintiffs' allegations support an entirely reasonable inference that the categorical ban on distributing absentee ballot applications under any circumstances implicates a broad category of activity, and that Plaintiffs have no alternative for providing voters the forms they need to ensure access to an absentee ballot. *See, e.g.*, Compl. ¶ 1, RE 1, PageID# 1 ("In the State of Tennessee, any Tennessean who is asked by their family member, friend, or fellow citizen to provide them with a copy of the absentee ballot application—which the State makes available online—cannot do so without committing a felony. . . . For Plaintiffs, this means . . . they cannot actually provide the absentee ballot application to any voter, even if the voter asks for it."). Plaintiffs' allegations also support a reasonable inference that it is *un*reasonable to criminalize the distribution of a state-issued absentee ballot application that is widely available online. *Id*. ¶ 18, PageID# 7; *see also* Mem. Op. and Order, ECF 66 at 9 n. 9, *Memphis A. Philip Randolph Institute v. Hargett*, No. 3:20-cv-00374, (M.D. Tenn. Aug. 11, 2020) ("With the application now being available online, one may reasonably wonder why it is still a felony (even absent nefarious surrounding circumstances) for persons not with an election commission to give an application to someone else."). This is particularly so when the application, once obtained, may be filled out by any person the voter chooses. Compl. ¶ 19, RE 1, PageID# 7. Further, Plaintiffs' allegations support a reasonable inference that it is precisely *because* the criminal prohibition applies so broadly—

including to family members or when a voter requests an application—that renders it unreasonable and extremely burdensome.

Only by expressly declining to credit Plaintiffs' factual allegations and drawing all reasonable inferences against Plaintiffs, was the district court able to reach the conclusion that the burden on Plaintiffs' rights is minimal. Applying the correct standard, Plaintiffs have alleged sufficient facts that, taken as true, give rise to a reasonable inference that the burdens imposed by the Law are at least moderate.

## B.    The Complaint Plausibly Alleges that the Law is Not Justified by an Important State Interest.

Plaintiffs also plausibly alleged that the Law does not serve any important state interest. *See* RE 1, PageID# 10-12; *see id.* ¶ 26-29. Defendants assert, but do not show, how the law serves their interest in preventing voter confusion and protecting the integrity of elections. RE 47, PageID# 479; *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) ("The defendant has the burden to show that the plaintiff failed to state a claim for relief"). Regardless of whether the state has a general interest in "preventing voter confusion and protecting the integrity of elections" in the abstract, Plaintiffs have sufficiently alleged that such general interests do not justify the particular means the state has chosen here, namely the categorical criminal prohibition on distribution of the state-issued absentee ballot application, including at the request of a voter. *See, e.g.*, Compl. ¶ 1, RE 1, PageID# 1; *id.* ¶ 18, PageID# 7; *id.* ¶ 19, PageID# 7.

Instead of identifying the precise regulatory interests asserted by the State in support of its motion to dismiss, the district court relied on evidence submitted by Defendants at the preliminary injunction stage, which it acknowledged was "outside of the four corners of the Complaint." RE 56, PageID# 538.[17] The court also drew substantial inferences in favor of Defendants regarding the State's interest in the challenged law by "hypothesiz[ing] possible state interests . . . protected by the Law that were not asserted by Defendants." *Id.*, PageID# 538 n.7. Hypothesizing justifications on behalf of the state is hardly "drawing all reasonable inferences in favor of the Plaintiffs." *Coley*, 799 F.3d at 537.

Because Plaintiffs have alleged sufficient facts from which this Court could reasonably infer that the criminal prohibition on distribution of absentee ballot applications does not serve any important State interest, much less the precise

---

[17] The district court cited *Daunt*, 999 F.3d at 314 for the proposition that it is entitled to rely on state interests that may be "gleaned from the face of the challenged law." RE 56, Page ID# 538 n.7. The district court also relied on this proposition to find that it could incorporate by reference its analysis from the preliminary injunction stage of "materials outside of the four corners of the Complaint," to support the State's interest in enforcing the challenged law. *Id*. But *Daunt* does not authorize courts to hypothesize important interests on behalf of the state or to rely on evidence put forward by the State that goes beyond the pleadings in order to dismiss a plaintiff's claim. Instead, *Daunt* simply held that dismissal was warranted in that case because "the alleged *severity of the burdens* imposed can be gleaned from the face of the challenged law and they can be weighed against the *asserted state interests*." *Id*. at 313 (emphasis added). And it did so in part based on the plaintiffs' prior representations that there were no factual issues before the court. *Id*. As such, *Daunt* merely confirms that courts must look to the "precise interests put forward by the State." *Burdick*, 504 U.S. at 434 (quotation marks omitted).

interests asserted by the State, the Court should reverse the district court's dismissal of Plaintiff's complaint and remand for further proceedings.

## CONCLUSION

The district court erred in its application of the appropriate standard for adjudicating motions to dismiss. After acknowledging the plausibility of Plaintiffs' averments, the district court nonetheless declined to accept their factual allegations as true, went outside the pleadings, and drew inferences in favor of Defendants. Because Plaintiffs plausibly alleged that the challenged law violates their First Amendment rights, the Court should reverse the district court's decision and enter an order denying the motion to dismiss.

April 8, 2022                           Respectfully submitted,

                                        /s/ *Danielle Lang*

Ezra Rosenberg*                         Danielle Lang
Pooja Chaudhuri*                        Molly E. Danahy
Lawyers' Committee for Civil            Jonathan Diaz
Rights Under Law 1500 K Street          Campaign Legal Center
NW Suite 900                            1101 14th St. NW, Suite 400
Washington, DC 20005                    Washington, DC 20005
Tel.: (202) 662-8600                    Tel.: (202) 736-2200
pchaudhuri@lawyerscommittee.org         dlang@campaignlegal.org
                                        mdanahy@campaignlegal.org
                                        jdiaz@campaignlegal.org

William L. Harbison (No. 7012)
Lisa K. Helton (No. 23684)
Christopher C. Sabis (No. 30032)
Christina R.B. López (No. 37282)
Sherrard, Roe, Voigt & Harbison, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Phone: (615) 742-4200
Fax: (615) 742 4539
bharbison@srvhlaw.com
lhelton@srvhlaw.com
csabis@srvhlaw.com
clopez@srvhlaw.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because the brief contains 10,919 words, excluding the parts of the brief exempted by Rule 32(f). *See* Fed. R. App. P. 32(a)(7)(B).

This brief complies with the typeface requirements of Rule 32(a)(5)(A) and the type style requirements of Rule 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ *Danielle Lang*
Attorney for Plaintiffs-Appellants

# CERTIFICATE OF SERVICE

The undersigned herby certifies that the Brief of Plaintiffs-Appellants was electronically filed with the Sixth Circuit Court of Appeals on April 8, 2022. The Brief of Plaintiffs-Appellants was served by ECF on April 8, 2022, on counsel for Appellees. The addresses for counsel for Appellees are:

Janet Kleinfelter
Andrew B. Campbell
Alexander Rieger
Matthew D. Cloutier
Office of the Tennessee Attorney General
301 6th Ave. N.
Nashville, Tennessee 37243
Janet.kleinfelter@ag.tn.gov
Andrew.campbell@ag.tn.gov
Alex.rieger@ag.tn.gov
Matt.cloutier@ag.tn.gov
*Counsel for Defendants*

/s/ *Danielle Lang*
Attorney for Plaintiffs-Appellants

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS
### No. 3:20-cv-0736 (M.D. Tenn.)

| Document | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1–13 |
| 11 | Mot. for Prelim. Inj. | 43-45 |
| 44 | Mem. Op. and Order Denying Prelim. Inj. | 398-463 |
| 46 | Defs' Mot. to Dismiss | 465-467 |
| 47 | Defs' Mem. in Support of Mot. to Dismiss | 468-484 |
| 50 | Pls' Opp. to Mot. to Dismiss | 490-502 |
| 56 | Op. on Mot. to Dismiss | 525-588 |
| 57 | Order Granting Mot. to Dismiss | 589 |
| 59 | Notice of Appeal | 591 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |