No. 22-5028

## IN THE
## United States Court of Appeals
## FOR THE SIXTH CIRCUIT

JEFFREY LICHTENSTEIN, et al.,
Plaintiffs-Appellants.

v.

TRE HARGETT, in his official capacity as Secretary of State for the State of Tennessee, et al.,
Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**BRIEF OF CATO INSTITUTE AS *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFFS-APPELLANTS IN SUPPORT OF
REVERSAL**

JAY R. SCHWEIKERT
THE CATO INSTITUTE
1000 Massachusetts Ave., N.W.
Washington, D.C. 20001
(202) 842-0200

TIMOTHY S. DURST
KRISTIN C. COPE
O'MELVENY & MYERS, LLP
2501 North Harwood Street
Suite 1700
Dallas, TX 75201
(972) 360-1900

*Counsel for Amicus Curiae*

1

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 29 and Sixth Circuit Rule 29, counsel for *Amicus Curiae* Cato Institute certifies that the Cato Institute is not a subsidiary or affiliate of a publicly owned corporation.

By:  /s/ Kristin C. Cope
Attorney for Amicus Curiae

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS............................................................................................. ii

TABLE OF AUTHORITIES .................................................................................... iii

STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE ..........v

SUMMARY OF ARGUMENT ...............................................................................1

ARGUMENT .........................................................................................................3

    I.     Allowing the government to outlaw distribution of public documents sets a dangerous precedent. ......................................................................3

    II.    As outlined by the Appellants, criminalizing distribution of the Form burdens the free speech and free association rights of citizens. ...........6

    III.   Criminalizing distribution of the Form interferes with citizens' rights to petition the government for the redress of grievances. .....................8

        A.     The Law directly and indirectly interferes with citizens' ability to petition the government. ........................................................9

        B.     The Law restricts the "breathing space" that is necessary for citizens to effectively exercise their rights to petition. .............12

CONCLUSION ....................................................................................................14

CERTIFICATE OF SERVICE .............................................................................16

CERTIFICATE OF COMPLIANCE.....................................................................17

ADDENDUM ......................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*BE & K Const. Co. v. N.L.R.B.*,
122 S. Ct. 2390 (2002)……………………………………………………….13

*Buckley v. Valeo*,
 96 S. Ct. 612 (1976)……………………………………………………...13

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
 81 S. Ct. 523 (1961)……………………………………………………...13

*Gagliardi v. Village of Pawling*,
 18 F.3d 188 (2nd Cir. 1994)…………………………………...……9, 11

*Georgia v. Public.Resource.Org, Inc.*,
 140 S. Ct. 1498 (2020)…………………………….....……………....3, 5

*Gibbs v. Hopkins*,
 10 F.3d 373 (6th Cir. 1993)…………………………………………...11

*Johnson v. Avery*,
 89 S. Ct. 747 (1969)……………………………………………10, 11

*Laird v. Tatum*,
 408 U.S. 1 (1972)………………………………………..………...2, 8

*League of Women Voters v. Hargett*,
 400 F. Supp. 3d 706 (M.D. Tenn. 2019)…………………………....7

*Lozman v. City of Riviera Beach, Fla.*,
 138 S. Ct. 1945 (2018)……………………………………....8

*Meyer v. Grant*,
 486 U.S. 414 (1988)……………………………………….....6

*Nash v. Lathrop*,
 142 Mass. 29 (Mass. 1886)………………………….………3

*Nat'l Ass'n for Advancement of Colored People v. Button*,
83 S. Ct. 328 (1963) ………………………………………………….......13

*Nat'l Ass'n for the Advancement of Colored People v. State of Ala. ex. rel. Patterson*,
   357 U.S. 449 (1958)…………………………………………………….......7

*Philadelphia Newspapers, Inc. v. Hepps*,
106 S. Ct. 1558 (1986) …………………………………………………………13

*Rudd v. City of Norton Shores, Michigan*,
   977 F.3d 503 (6th Cir. 2020)…………………………………………………….12

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006)…………………………………………….12, 13, 14

*Susan B. Anthony List v. Driehaus*,
814 F.3d 466, 473 (6th Cir. 2016) …………………………………………....6

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*,
   88 S. Ct. 353 (1967)………………………………….………………...…..…2, 14

*United Transp. Union v. State Bar of Mich.*,
   401 U.S. 576 (1971)…………………………………………………………7

*Van Deelen v. Johnson*,
   497 F.3d 1151 (10th Cir. 2007)……………………………………………....9

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
   293 F.3d 791 (5th Cir. 2002)……………………….……………….…………3

*Wheaton v. Peters*,
   33 US 591 (1834)…………………….…………………….……....4

## Statutes

Tenn. Code § 2-6-202(c)(3)…………………………………………………....1

Tenn. Code Ann. § 2-19-133……………………………….……………6

## STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE

This brief is filed by leave of the court pursuant to Federal Rule of Appellate Procedure 29.

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Project on Criminal Justice was founded in 1999, and focuses in particular on the scope of substantive criminal liability, the proper and effective role of police in their communities, the protection of constitutional and statutory safeguards for criminal suspects and defendants, citizen participation in the criminal justice system, and accountability for law enforcement officers.

Cato's interest in this case arises from the manner in which Tennessee Code § 2-6-202(c)(3) burdens several related First Amendment rights through severe criminal penalties.

No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than the Amicus Curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

# SUMMARY OF ARGUMENT

We would have attached a copy of a Tennessee absentee ballot request form ("the Form") to this brief for the Court's review, but doing so would have exposed us—and anyone who distributed a copy of our brief, such as members of the Court or their staff—to the possibility of felony prosecution. That should give the Court pause. Tenn. Code § 2-6-202(c)(3) ("the Law") mandates a disproportionately severe criminal penalty if almost *any* person gives a blank, accurate copy of a publicly available government document—to *anyone else* for *any reason*. This sanction applies equally to a lawyer arguing about the contents of the Form, an activist petitioning for changes to the Form, or a grandson who prints out a copy of the Form at the request of his grandmother.

Allowing the government to criminalize the distribution of publicly available government forms would set a dangerous precedent, with implications extending far beyond just the election context. Government forms are often where the rubber meets the road when citizens attempt to exercise their rights; it is easy to see how a government could dissuade individuals from engaging in protected activity by making it unnecessarily difficult to obtain the required form. As the Appellants alleged below, the primary effect of the Law is to make it harder for elderly, poor, and/or technologically illiterate individuals to apply for absentee ballots. Preventing Appellants or others from assisting those vulnerable individuals by providing them

a copy of the Form effectively condemns citizens who lack internet access and printers to second-class access to the law.

The Law's threat of felony prosecution burdens a number of important First Amendment rights. As Appellants explain in detail in their brief, the Law directly infringes on their First Amendment rights to free speech and association. Additionally, the Law interferes with citizens' rights to petition their government for the redress of grievances. The Appellants sufficiently allege that vulnerable individuals have difficulty obtaining the Form necessary to petition their local election commission for an absentee ballot and that the Law prevents third parties from helping them do so. Furthermore, the Law stifles the effectiveness of individuals petitioning legislators or courts for redress regarding the contents of the Form or the burdensome nature of the Law.

In addition to the direct First Amendment impacts, the Law's broad reach backed by the threat of felony prosecution cannot help but chill the exercise of First Amendment rights. *See Laird v. Tatum*, 408 U. S. 1, 11 (1972) ("[T]his Court has found in a number of cases that constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights."). Laws must be invalidated if they do not leave sufficient "breathing room" for the exercise of First

Amendment rights.  *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 88 S. Ct. 353, 356 (1967) ("The First Amendment would . . . be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such.").

Below, the State did not articulate any government interest that would require prohibiting the distribution of blank, accurate copies of the Form, especially not to individuals who requested assistance obtaining a Form.  Absent any government interest in the Law, it will not survive any level of scrutiny.  All the more so at this stage of the lawsuit; Appellants have clearly alleged sufficient facts to survive a motion to dismiss.  Accordingly, Cato urges the Court to reverse and remand.

## ARGUMENT

**I.    Allowing the government to outlaw distribution of public documents sets a dangerous precedent.**

It is axiomatic that every citizen should have free and equal access to the law. *See Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1507 (2020) ("'Every citizen is presumed to know the law,' and 'it needs no argument to show . . . that all should have free access' to its contents.") (*quoting Nash v. Lathrop*, 142 Mass. 29 (Mass. 1886)).  The law belongs to the public and citizens should be able to use it for whatever purpose they see fit. *E.g. Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293

F.3d 791, 799 (5th Cir. 2002) ("[P]ublic ownership of the law means precisely that 'the law' is in the 'public domain' for whatever use the citizens choose to make of it. Citizens may reproduce copies of the law for many purposes, not only to guide their actions but to influence future legislation, educate their neighborhood association, or simply to amuse.").  Contrary to these principles, the Law makes it a felony to give a copy of a publicly available Form to anyone for any purpose, ***including the purpose for which the Form was intended*** (requesting an absentee ballot).  Because it is so broad, the Law cannot avoid interfering with citizens' ability to access an important government form and, by extension, the ability to vote absentee.

Allowing the government to maintain blanket prohibitions on the distribution of publicly available government forms would have extraordinary implications beyond just the elections context.  While statutes and regulations are "the light by which we guide our actions," *Wheaton v. Peters*, 33 US 591, 621 (1834), government forms are vehicles we use to navigate that lit path and actually avail ourselves of the benefits of the law.  Tennessee's threat of felony prosecution for distribution of an accurate government is full square counter to those important interests.  And the trial court's holding that such a restriction is valid creates dangerous precedent for a multitude of similar contexts, where limiting access to government forms could be used to suppress the exercise of a variety of rights.  For instance, reports of police

4

misconduct would undoubtedly drop if complainants were required to request the complaint form in person from a police officer. Similarly, criminalizing distribution of forms could prevent homeless shelters or hospitals from helping residents to register for government benefits. Or, in the political context, petition drives would be crippled if canvassers were limited to suggesting that individuals print out and complete their own petition form at home.

Meaningful access to the law necessarily includes access to government forms. Otherwise, the most vulnerable members of society will find themselves unable to exercise many legal rights and privileges. That is clearly the case here, as there is no doubt that the Law disproportionately impacts certain citizens—particularly the poor, elderly, and/or technologically illiterate—who have difficulty printing their own copy of the Form or securing transportation to their county election commission. By making private distribution of the Form a felony, the Law prevents Appellants from helping those individuals overcome their disadvantages and condemns them to second-class access to their legal rights and privileges. *Cf. Public.Resource.Org, Inc.*, 140 S. Ct. at 1512 (rejecting the premise that some citizens could be limited to "the economy-class version of the Georgia Code available online," thereby putting them at a disadvantage to "first-class readers with access to the annotations"). This is unacceptable in a society that strives to ensure equality under the law.

This is not to say that a state cannot exercise any control over the distribution of government forms. For instance, the State clearly has an interest in preventing forms from being distributed in the context of false or misleading information, and doing so is already illegal in the voting context. *See* Tenn. Code Ann. § 2-19-133 (making it a class E felony to disseminate false or misleading information about voting). The Law here, however, functions as a blunt instrument—criminalizing *any* distribution of the Form, solicited or unsolicited, accurate or inaccurate, and the State has failed to demonstrate that this blanket prohibition serves any legitimate state purpose. In the Internet Age, this restriction does nothing more than create an underclass of citizens whose lack of resources or technology skills puts the benefits of absentee voting functionally out of their reach.

## II. As outlined by the Appellants, criminalizing distribution of the Form burdens the free speech and free association rights of citizens.

The Appellants seek to exercise their First Amendment rights by distributing the Form to their members and other citizens as part of their attempts to encourage voting in elections. *See* Appellants' Brief 14–16. Distribution of the Form is unquestionably expressive conduct under the First Amendment*, see* Appellants Br. 16-22, and a key part of the Appellants' political speech. *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988) ("interactive communication concerning political change that is appropriately described as 'core political speech'"); *cf. Susan B. Anthony List v.*

*Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016) ("Political speech is at the core of First Amendment protections."). Furthermore, despite the District Court's failure to address the Appellants' free association rights, or even use the word "associate" in its dismissal order, it is clear from the Appellants' pleadings that the Law burdens the Appellants' First Amendment right to association. *Nat'l Ass'n for the Advancement of Colored People v. State of Ala. ex. rel. Patterson*, 357 U.S. 449, 460 (1958) ("It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech."); *see also League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 720 (M.D. Tenn. 2019) ("[T]he 'entire voter registration activity' implicates the 'freedom of the plaintiffs to associate with others for the advancement of common beliefs [that] is protected by the First and Fourteenth Amendments.'"); *cf. United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 582 (1971) ("Since the members of a union have a First Amendment right to help and advise each other in securing effective legal representation, there can be no doubt that transportation of injured members to an attorney's office is within the scope of that protected activity.").

The Law not only infringes on the Appellants' protected speech and associational rights but also burdens the exercise of those rights by threatening felonious prosecution without caveat or safe harbor. Encouraging another citizen to

participate in democracy through the state-approved absentee voting process becomes felonious if the speaker takes steps to ensure her message is effective— namely, providing the application for absentee ballot. Such a threat is surely enough to chill the political speech and civic engagement of even the most ardent proponent of absentee voting. Moreover, the District Court's conclusion that government forms are not "expressive" and distribution thereof can be divorced from the surrounding speech and association for First Amendment purposes could be used to dodge constitutional scrutiny and allow the government to chill any constitutionally protected activity simply by restricting access to a necessary form. *See Laird*, 408 U.S. at 11 ("In recent years this Court has found in a number of cases that constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights.").

### III.    Criminalizing distribution of the Form interferes with citizens' rights to petition the government for the redress of grievances.

Appellants' Brief focuses on their own free speech and association rights violated by the Law, but the Law is further invalid because it violates additional rights of an even broader set of citizens beyond Appellants: all Tennessee citizens who might need to or be interested in absentee voting. In doing so, the Law interferes with "one of the most precious of the liberties safeguarded by the Bill of

Rights," *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1954 (2018),—citizens' First Amendment rights "to petition the Government for a redress of grievances."  U.S. Const. amend. I.

A.  **The Law directly and indirectly interferes with citizens' ability to petition the government.**

A citizen's right to petition is broad, *Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007) ("[A] private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress; the petitioning clause . . . does not pick and choose its causes.  The minor and questionable, along with the mighty and consequential, are all embraced.") (emphasis added)), and includes requests for administrative relief, *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2nd Cir. 1994) ("The rights to complain to public officials and *to seek administrative . . . relief* are protected by the First Amendment." (emphasis added)).  The Law interferes with citizens' ability to petition the government directly by making it more difficult for them to obtain a copy of the Form, and also interferes with that right indirectly by preventing Appellants from assisting citizens who need their help to exercise their petition rights.  The district court's order of dismissal should therefore by reversed and the case remanded.

A request for an absentee ballot is a request for administrative relief from a county election commission.  The Appellants have plausibly alleged that restricting public distribution of the Form will leave many Tennesseans who would otherwise vote absentee unable to petition their local election commission for absentee ballots. *See, e.g.*, Dec. of Memphis and W. Tenn. AFL-CIO Cent. Lab. Council in Support of Pl.'s Mot. for Prelim. Inj., RE 11-4, Page ID # 157, para. 22–24.  Taking those allegations as true, the Law creates an unconstitutional burden on citizens' First Amendment rights to petition.

The actions Appellants wish to take—providing accurate copies of the Form to poor, elderly, and/or technologically illiterate citizens, *see, e.g* Dec. of Memphis and W. Tenn. AFL-CIO Cent. Lab. Council in Support of Pl.'s Mot. for Prelim. Inj., RE 11-4, Page ID # 157, para. 22–24,—are also protected by the First Amendment because they are necessary prerequisites to certain citizens exercising their right to petition.  In *Johnson v. Avery*, the Supreme Court struck down a Tennessee prison regulation that prohibited inmates from serving as "jailhouse lawyers" and assisting other inmates in filing legal cases.  89 S. Ct. 747, 748-51 (1969).  The *Avery* Court explained:

> There can be no doubt that Tennessee could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions. Here Tennessee has adopted a rule which, in the absence of any other source of assistance for such prisoners,

> effectively does just that. The District Court concluded that "(f)or all practical purposes, if such prisoners cannot have the assistance of a 'jailhouse lawyer,' their possibly valid constitutional claims will never be heard in any court."

*Avery*, 89 S. Ct. 747, 749–50 (1969); *see also Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993) (finding that it was constitutionally impermissible for prison officials to retaliate against an inmate for helping other inmates petition the courts). Similarly, there is no doubt that Tennessee could not constitutionally prohibit poor, elderly, and/or technologically illiterate citizens from accessing the Form. But, as the Appellants have plausibly alleged, the law does just that because many such individuals will be unable to obtain a copy of the Form and request absentee ballots without assistance. *E.g* Dec. of Memphis and W. Tenn. AFL-CIO Cent. Lab. Council in Support of Pl.'s Mot. for Prelim. Inj., RE 11-4, Page ID # 157, para. 22–24. Applying the same principles discussed in *Avery* and *Gibbs*, the Appellants have made out a cognizable claim that the Law places an unconstitutional burden on the right to petition by making it a felony to provide certain individuals with the assistance they need to effectively petition the government for administrative relief. *See Gagliardi*, 18 F.3d at 194.

Further, the Law also interferes with citizens' ability to directly petition the courts and legislature about the Law and the Form themselves. For instance, a lobbyist who was fighting for the Law to be repealed or objecting to the contents of

a particular county's version of the Form could not provide a copy of the Form to a legislator as part of his presentation without risking felony prosecution. For the same reasons, we did not attach a copy of the Form to this brief—which is itself a petition for judicial relief from this Court. This type of direct advocacy is at the core of the First Amendment right to petition, which allows an ordinary citizen to "convey the special concerns of the petition's author to the government, and to request action by the government to address those concerns, generally ***without fear of criminal or civil repercussions***." *Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 513 (6th Cir. 2020) (internal quotations omitted) (emphasis added).

### B. The Law restricts the "breathing space" that is necessary for citizens to effectively exercise their rights to petition.

Courts have long interpreted the First Amendment rights to speech and petition to encompass activities that are incidental and predicate to directly protected conduct. For instance, many courts have applied the *Noerr-Pennington* doctrine to construe statutes such that they do not implicate the constitutional right to petition. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) ("Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."). In *Noerr*, for example, the Supreme Court interpreted the Sherman Act to avoid conflict with a group of railroads' constitutional rights to petition the government,

which included a related public relations campaign that was merely incidental to the railroads' direct petitions to legislators. *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 81 S. Ct. 523, 531 (1961). The Court employed the canon of constitutional avoidance, not because a contrary interpretation of the Sherman Act would have directly intruded on the railroads' rights to petition, but because that interpretation risked intrusion on the "breathing space" necessary to the exercise of those rights. *Id.*; *see also Nat'l Ass'n for Advancement of Colored People v. Button*, 83 S. Ct. 328, 338 (1963) ("Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."); *BE & K Const. Co. v. N.L.R.B.*, 122 S. Ct. 2390, 2398-99 (2002) (interpreting National Labor Relations Act so as to leave sufficient "breathing space" around the First Amendment right to petition).

The Supreme Court has subsequently expanded this "breathing space" principle and recognized that "certain conduct, not in itself speech, is protected in order adequately to protect the actor's ability to exercise his free speech rights." *See Sosa*, 437 F.3d at 933 (*citing Buckley v. Valeo*, 96 S. Ct. 612 (1976)); *see also Philadelphia Newspapers, Inc. v. Hepps*, 106 S. Ct. 1558, 1561 (1986) ("Freedoms of expression require 'breathing space.'"). "This is so because, to exercise its petitioning rights meaningfully, a party may not be subjected to liability for conduct intimately related to its petitioning activities. 'The First Amendment would . . . be a

13

hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such.'" *Sosa*, 437 F.3d at 934 (*quoting United Mine Workers of Am., Dist. 12*, 88 S. Ct. at 356).

Here, the district court's holding was essentially that the Law is precisely this kind of "indirect restraint," yet wrongly upheld its validity. Accordingly, even if the Court finds that the Law does not directly implicate speech or petition rights, it should still reverse and remand because the Appellants have alleged sufficient facts to support a finding that the Law does not leave adequate "breathing space" to protect citizens' "ability to exercise" their rights through constitutionally protected activities.

## CONCLUSION

The Law mandates a disproportionately severe criminal penalty for distributing blank, accurate copies of a publicly available government form. Criminalizing such activities not only sets a dangerous precedent by condemning certain vulnerable groups to second-class access to the law, it also infringes on a wide range of First Amendment rights, including freedoms of speech, association, and petition. At minimum, the Law does not leave sufficient "breathing room" around those crucial rights. The Appellants have pled sufficient facts to

support a finding that the Law runs afoul of important constitutional freedoms, so

the Court should reverse and remand.

Respectfully submitted,

/s/ Kristin C. Cope

JAY R. SCHWEIKERT                    TIMOTHY S. DURST
THE CATO INSTITUTE                   KRISTIN C. COPE
1000 Massachusetts Ave., N.W.        O'MELVENY & MYERS, LLP
Washington, D.C. 20001               2501 North Harwood Street
(202) 842-0200                       Suite 1700
                                     Dallas, TX 75201
                                     (972) 360-1900

                                     *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I, Kristin C. Cope, hereby certify that on this date, April 15, 2022, I caused

the foregoing brief to be filed via the Court's CM/ECF system, which caused the

document to be served on all parties and their counsel.

Dated: April 15, 2022

_____/s/ Kristin C. Cope_____

16

## CERTIFICATE OF COMPLIANCE

I, Kristin C. Cope, hereby certify that the foregoing brief contains 3,382 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman.

Dated: April 15, 2022

_____/s/ Kristin C. Cope_____

**ADDENDUM**

**DESIGNATION OF RELEVANT ORIGINATING COURT DOCUMENTS**

| Document | Description | Page ID # |
|---|---|---|
| 11-4 | Exhibit C to Mot. for Prelim. Inj. – Dec. of Memphis and West Tenn. AFL-CIO Cent. Lab. Council in Support of Pl.'s Mot. for Prelim. Inj. | 152-159 |
| | | |
| | | |
| | | |