No. 22-5028

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

———————————

JEFFREY LICHTENSTEIN, et al.,
Plaintiffs-Appellants,

v.

TRE HARGETT, in his official capacity as Secretary of State for the State of
Tennessee, et al.,
Defendants-Appellees.

———————————

On Appeal from the United States District Court for the
Middle District of Tennessee
(No. 3:20-cv-00736)

---

## BRIEF OF DEFENDANTS-APPELLEES

---

HERBERT H. SLATERY III
  Attorney General and Reporter
  of the State of Tennessee

ANDRÉE S. BLUMSTEIN
  Solicitor General

JANET M. KLEINFELTER
  Deputy Attorney General
  *Counsel of Record*

ALEXANDER S. RIEGER
  Senior Assistant
  Attorney General

MATTHEW D. CLOUTIER
  Assistant Attorney General

P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov

# TABLE OF CONTENTS

Table of Authorities .................................................................... iii

Statement Regarding Oral Argument ........................................1

Statement of Jurisdiction............................................................2

Issue Presented for Review ........................................................3

Statement of the Case..................................................................4

Summary of Argument ................................................................8

Standard of Review.....................................................................9

Argument....................................................................................10

   I.  The First Amendment Does Not Apply .........................10

     A. The distribution of absentee-ballot applications is not
       expressive conduct....................................................11

       1.  There is no great likelihood that absentee-ballot-
         application recipients would understand Plaintiffs'
         purported message..............................................12

       2.  Decisions of other courts do not support Plaintiffs' argument ..........15

       3.  The district court did not misapply the motion-to-dismiss
         standard..............................................................18

     B. The distribution of absentee-ballot applications is not speech .................23

     C. The Distribution of absentee-ballot applications is not expressive
       association .................................................................27

  II.  Even If the First Amendment Did Apply, the Challenged Law
    Would Still Survive .......................................................31

Conclusion .................................................................................39

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
 280 F.3d 619 (6th Cir. 2002) ...............................................................28

*Anderson v. Celebrezze*,
 460 U.S. 780 (1983)............................................................................34

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................20

*Brown v. Smith*,
 551 F.3d 424 (6th Cir. 2008) ..............................................................32

*Boy Scouts of Am. v. Dale*,
 530 U.S. 640 (2000)......................................................................28, 29

*Buckley v. Am. Const. L. Found., Inc.*,
 525 U.S. 182 (1999)............................................................................16

*Burdick v. Takushi*,
 504 U.S. 428 (1992)......................................................................11, 34

*Citizens for Tax Reform v. Deters*,
 518 F.3d 375 (6th Cir. 2008) ..........................................................10, 27

*City of Erie v. Pap's A.M.*,
 529 U.S. 277 (2000)............................................................................36

*Clark v. Cmty. For Creative Non-Violence*,
 468 U.S. 288 (1984)............................................................................22

*Daunt v. Benson*,
 999 F.3d 299 (6th Cir. 2021) ..............................................................19

*District of Columbia v. Heller*,
 554 U.S. 570 (2008)............................................................................32

*Doe v. Baum*,
 903 F.3d 575 (6th Cir. 2018) ..............................................................10

*Democracy N.C. v. N.C. State Bd. of Elections*,
476 F. Supp. 3d 158 (M.D.N.C. 2020) ...............................................................17

*DSCC v. Simon*,
No. 62-CV-20-585, 2020 WL 4519785 (Minn. Dist. Ct. July 28,
2020) ...................................................................................................................15

*Emily's List v. Fed. Election Comm'n*,
581 F.3d 1 (D.C. Cir. 2009) ...............................................................................27

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) .........................................................................................*passim*

*Jefferson v. Sewon Am., Inc.*,
891 F.3d 911 (11th Cir. 2018) ............................................................................32

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010).............................................................................................36

*League of Women Voters of Fla. v. Browning*,
575 F. Supp. 2d 1298 (S.D. Fla. 2008) ...............................................................16

*League of Women Voters of Fla. v. Browning*,
863 F. Supp. 2d 1155 (N.D. Fla. 2012) ..............................................................15

*League of Women Voters of Fla. v. Cobb*,
447 F. Supp. 2d 1314 (N.D. Fla. 2006) .......................................................15, 27

*Libertarian Party of Ohio v. Blackwell*,
462 F.3d 579 (6th Cir. 2006) ..............................................................................36

*Meyer v. Grant*,
486 U.S. 414 (1988)......................................................................................*passim*

*Miller v. City of Cincinnati*,
622 F.3d 524 (6th Cir. 2010) ...............................................................28, 29, 30

*Priorities USA v. Nessel*,
462 F. Supp. 3d 792 (E.D. Mich. 2020) .............................................................15

*Project Vote v. Blackwell*,
455 F. Supp. 2d 694 (N.D. Ohio 2006) ..............................................................15

*Rudd v. City of Norton Shores, Mich.*,
    977 F.3d 503 (6th Cir. 2020) ....................................................................9, 10, 28

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
    547 U.S. 47 (2006)........................................................................................*passim*

*Schmitt v. LaRose*,
    933 F.3d 628 (6th Cir. 2019) ...............................................................................33

*Sickles v. Campbell Cnty., Ky.*,
    501 F.3d 726 (6th Cir. 2007) ...............................................................................24

*Spence v. Washington*,
    418 U.S. 405 (1974)......................................................................................*passim*

*Storer v. Brown*,
    415 U.S. 724 (1974)................................................................................................11

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019) ...............................................................................23

*Tenn. State Conf. of NAACP. v. Hargett*,
    420 F. Supp. 3d 683 (M.D. Tenn. 2019) .....................................................15, 32

*Texas v. Johnson*,
    491 U.S. 397 (1989)......................................................................................*passim*

*Thompson v. DeWine*,
    976 F.3d 610 (6th Cir. 2020) ..........................................................................34, 35

*Thompson v. DeWine*,
    959 F.3d 804 (6th Cir. 2020) ................................................................................37

*Thornhill v. Alabama*,
    310 U.S. 88 (1940).................................................................................................10

*Turner Broad Sys., Inc. v FCC*,
    520 U.S. 180 (1997)................................................................................................35

*United States v. O'Brien*,
    391 U.S. 367 (1968)...............................................................................12, 24, 32, 33

*VoteAmerica v. Raffensperger,*
No. 1:21-cv-1390 (N.D. Ga. Dec. 9, 2021) ......................................15

*VoteAmerica v. Schwab,*
No. CV 21-2253-KHV, 2021 WL 5918918 (D. Kan. Dec. 15,
2021) ...........................................................................16, 17, 27

*Voting for Am., Inc. v. Andrade,*
488 F. App'x 890 (5th Cir. 2012) ...........................................25, 32

*Voting for Am., Inc. v. Steen,*
732 F.3d 382 (5th Cir. 2013) .....................................................*passim*

*Ward v. Rock Against Racism,*
491 U.S. 781 ...........................................................................36

## Statutes

28 U.S.C. § 1291 .........................................................................2

28 U.S.C. § 1331 .........................................................................2

28 U.S.C. § 1343 .........................................................................2

28 U.S.C. § 1357 .........................................................................2

42 U.S.C. § 1983 .........................................................................2

Tenn. Code Ann. § 2-6-202(a)(1) ...............................................37

Tenn. Code Ann. § 2-6-202(a)(3) ...............................................37

Tenn. Code Ann. § 2-6-202(c)(3) .........................................*passim*

## Other Authorities

U.S. Const. art. I, § 4, cl. 1 ........................................................4

U.S. Const. amend. I ...................................................................10

Tenn. Const. art. IV, § 1 ............................................................4

Fed. R. Civ. P. 12(b)(6) .........................................................1, 10

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees agree that oral argument is warranted in this case, as it will aid the decisional process.  This appeal involves significant First Amendment questions raised in the context of the district court's dismissal under Fed. R. Civ. P. 12(b)(6) of a challenge to a Tennessee statute regulating the distribution of absentee-ballot applications.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, 1357, and 42 U.S.C. § 1983.  It entered an order dismissing Plaintiffs' claims on December 7, 2021.  (Mem. Op. Granting Mot. to Dismiss, R. 56, PageID# 525–40; Order, R. 57, PageID# 589.)  Plaintiffs appealed that order on January 6, 2022.  (Notice of Appeal, R. 59, PageID# 591–92.)  This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

Whether the district court properly dismissed for failure to state a claim Plaintiffs' allegations that Tenn. Code Ann. § 2-6-202(c)(3)—which aims to reduce the chance of voter confusion by ensuring that only election officials may distribute copies of the State's absentee-ballot-application form—violates Plaintiffs' First Amendment right to engage in political speech and expressive conduct and their right of association.  (Plaintiffs' Issues 1–4.)

## STATEMENT OF THE CASE

Exercising its authority under both the federal and State Constitutions to regulate elections, *see* U.S. Const. art. I, § 4, cl. 1; Tenn. Const. art. IV, § 1, the Tennessee legislature has enacted various laws to protect the integrity of the State's elections, including Tenn. Code Ann. § 2-6-202(c)(3). That statute provides that "[a] person who is not an employee of an election commission commits a Class E felony if such person gives an application for an absentee ballot to any person." This provision was enacted in 1994 and has remained unchanged for nearly three decades.

Plaintiffs here—one individual and five organizations[1]—are challenging the constitutionality of Tenn. Code Ann. § 2-6-202(c)(3). Plaintiffs alleged that the statutory prohibition on the distribution of absentee-ballot applications is an "extraordinarily burdensome constraint on their ability to fully engage with voters." (Compl., R. 1, PageID# 8.) "Having the ability to provide voters with the absentee ballot application," Plaintiffs explained, "is necessary because [they] have found that their voter engagement efforts are significantly more effective when they are able to provide voters with all of the information and requisite forms they might need to register to vote, or to request to vote absentee." (*Id.* at PageID# 9.)

---

[1] The individual is Jeffrey Lichtenstein, and the five organizations are: the Memphis and West Tennessee AFL-CIO Central Labor Council, the Tennessee State Conference of the NAACP, the Equity Alliance, the Memphis A. Phillip Randolph Institute, and Free Hearts. (Compl., R. 1, PageID# 2–6.)

Based on these alleged facts, Plaintiffs claimed that the challenged law restricted their "core political speech and expressive conduct—namely encouraging voting through the distribution of absentee ballot applications in an effort to engage potential voters and encourage them to vote." (*Id.* at PageID# 11.) Plaintiffs also claimed that "because the threat of criminal sanctions imposed" by the challenged law "extends to the Organizational Plaintiffs' members," the law "also unconstitutionally infringes on the Organizational Plaintiffs' First Amendment right to association." (*Id.* at PageID# 12.) Plaintiffs sought a declaration that the challenged law was unconstitutional, as well as preliminary and permanent injunctive relief. (*Id.* at PageID# 13.)

Plaintiffs' motion for a preliminary injunction was denied. The district court concluded, among other things, that Plaintiffs had failed to show a likelihood of success on the merits of their claims. (Mem. Op. Den. Mot. for Prelim. Inj., R. 44, PageID# 412–58.) The court first "discuss[ed] what the [challenged law] does and does not prohibit." (*Id.* at PageID# 423.) The law "prohibits no spoken or written expression whatsoever and also leaves open a very wide swath of conduct, prohibiting just one very discrete kind of act." (*Id.* at PageID# 425.) Because that act—the distribution of absentee-ballot applications—is neither inherently expressive conduct nor speech (*see id.* at PageID# 436–37), the district court held that it fell outside the "scope of the First Amendment" (*id.* at PageID# 437). And

even if the distribution of absentee-ballot applications were speech, it would not be "core political speech" entitled to strict scrutiny. (*Id.* at PageID# 439–43.)

The district court was thus left with two options: (1) that the challenged law was subject to rational-basis review because the First Amendment does not apply at all, or (2) that the law should be analyzed under the *Anderson-Burdick* framework, either because it is an election law or because it does restrict expressive activity but not core political speech. (*See id.* at PageID# 443–44.)

The district court concluded that the challenged law was subject to rational-basis review—either because the law does not implicate Plaintiffs' First Amendment rights at all or because the *Anderson-Burdick* framework prescribes that standard, since any burdens imposed by the statute are "light" or "minimal." (*See id.* at PageID# 447–49.) Nevertheless, in "an abundance of caution," the court chose to apply "rational-basis plus" review (*id.* at PageID# 448–49), under which "the state's interests [must] be 'important' rather than merely legitimate" (*id.* at PageID# 448). The court determined that the State's asserted interests—"preventing voter confusion and protecting the integrity of elections"—cleared that bar. (*Id.* at PageID# 449–50.) And because there was also a rational relationship between those interests and the challenged law, the court held that the law survived "rational-basis plus" review. (*Id.* at PageID# 457.) This meant that the law necessarily also passed the "easier" rational-basis test. (*Id.* at PageID# 458.)

The district court granted Defendants' subsequent motion to dismiss for failure to state a claim on which relief could be granted. The court dismissed the complaint in full for the same reasons it had declined to issue a preliminary injunction—indeed, the court incorporated its preliminary-injunction opinion into its ruling on Defendants' motion to dismiss. (Mem. Op. Granting Mot. to Dismiss, PageID# 525 n.1, 536 n.5.)

The court recognized that "a different standard of review" applied at the motion-to-dismiss stage (*id.* at PageID# 539–40), but concluded that "Plaintiffs as a matter of law cannot succeed on their claim, even accepting as true everything in the Complaint that the [c]ourt is required on this Motion to accept as true" (*id.* at PageID# 540). Just as it had at the preliminary-injunction stage, the court determined that the challenged law "does not restrict expressive conduct and thus is not within the scope of the First Amendment." (*Id.* at PageID# 536.) And even if the distribution of absentee-ballot applications is "within the scope of the First Amendment," the court continued, "it is not 'core' political speech," meaning that the law was subject to "rational-basis plus" or traditional rational-basis review. (*Id.* at PageID# 536–37.) The law survived under either of those standards. (*Id.* at PageID# 537–39.)

Plaintiffs appealed to this Court. (Notice of Appeal, R. 59, PageID# 591–92.)

## SUMMARY OF ARGUMENT

This Court should affirm the dismissal of the complaint. As a matter of law, Plaintiffs failed to state a claim that that allowing only election-commission employees to distribute absentee-ballot applications restricts Plaintiffs' expressive conduct, core political speech, or expressive association in violation of the First Amendment.

*First*, the First Amendment does not apply. The challenged law prohibits no spoken or written expression at all—it regulates only conduct, namely, the distribution of absentee-ballot applications. That conduct is not sufficiently imbued with the elements of communication to bring it within the scope of the First Amendment. And it follows that it is not core political speech either.

Nor does the prohibition of the distribution of absentee-ballot applications violate the First Amendment right to freedom of association. This Court has explained that freedom of association protects a group's membership decisions, and that it protects against laws that make group membership less attractive without directly interfering with an organization's composition. Government action thus does not interfere with the right of association unless it directly or indirectly interferes with group membership. Nowhere in their complaint did the Plaintiff organizations allege that § 2-6-202(c)(3) interferes with their membership.

*Second*, even if the First Amendment did apply, § 2-6-202(c)(3) would survive constitutional review. Whether the First Amendment challenge is analyzed under *Texas v. Johnson* or under *Anderson-Burdick*, the outcome is the same: the law is subject to, at most, intermediate scrutiny. Under that standard, a content-neutral regulation will be sustained if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests. Section 2-6-202(c)(3) easily satisfies that standard.

Tennessee's interests in enforcing § 2-6-202(c)(3)—preventing voter confusion and protecting the integrity of elections—are important and unrelated to the suppression of free speech. And any burdens on Plaintiffs' First Amendment rights are minimal. The law places no limits on Plaintiffs' spoken or written communication whatsoever; it prohibits only the distribution of a single state-created document and leaves Plaintiffs free to convey their message through any other means they choose.

## STANDARD OF REVIEW

A district court's grant of a motion to dismiss for failure to state a claim is subject to de novo review. *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 511 (6th Cir. 2020) (citations omitted). To survive a motion to dismiss, a plaintiff's complaint "must provide 'a short and plain statement of the claim showing that he

is entitled to relief.'" *Id.* (citation omitted). When considering whether a complaint meets this requirement, this Court "accept[s] as true its factual allegations and draw[s] all reasonable inferences in [the plaintiff's] favor," but "disregard[s] any legal conclusions." *Id.* (citing *Doe v. Baum*, 903 F.3d 575, 580–81 (6th Cir. 2018)).

## ARGUMENT

Plaintiffs challenged a Tennessee law, Tenn. Code Ann. § 2-6-202(c)(3), that prohibits distribution of the State's absentee-ballot-application forms by anyone other than election-commission officials. The district court properly dismissed Plaintiffs complaint under Fed. R. Civ. P. 12(b)(6); Plaintiffs failed to state a claim that the law violates their First Amendment rights.

## I. The First Amendment Does Not Apply.

The First Amendment to the United States Constitution provides in part that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The Fourteenth Amendment extends these prohibitions against the States. *See Thornhill v. Alabama*, 310 U.S. 88, 95 (1940). Yet the rights protected by the First Amendment "are not, of course, without boundary." *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 379 (6th Cir. 2008). And that is especially true in the election context. As the Supreme Court has recognized, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort

of order, rather than chaos, is to accompany the democratic processes." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

Plaintiffs have challenged a state election law on First Amendment grounds. But the law regulates only distribution of the State's absentee-ballot applications, and such distribution is neither expressive conduct nor speech. Nor does the distribution of these applications implicate Plaintiffs' associational rights. This means that the First Amendment does not apply at all, and that Plaintiffs therefore had no claim for a First Amendment violation.

### A.    The distribution of absentee-ballot applications is not expressive conduct.

Contrary to Plaintiffs' argument, the distribution of Tennessee's absentee-ballot applications is not expressive conduct protected by the First Amendment. (*See* Br. Plaintiffs-Appellants, 14–28.)

"The First Amendment," the Supreme Court has observed, "literally forbids the abridgment only of 'speech.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989). The Court has "long recognized," however, that the First Amendment's "protection does not end at the spoken or written word." *Id.* Conduct, for example, may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Id.* (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)).

But not all conduct merits First Amendment protection. Indeed, the Supreme Court has expressly "rejected the view that an apparently limitless variety of conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea." *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 375 (1968)) (internal quotation marks omitted). To determine "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," courts ask "whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Id.* (quoting *Spence*, 418 U.S. at 410–11).

### 1. There is no great likelihood that absentee-ballot-application recipients would understand Plaintiffs' purported message.

Plaintiffs claim that the conduct they seek to engage in—the distribution of absentee-ballot applications—satisfies this two-part test. They alleged that "[i]n light of the COVID-19 pandemic and the shifting voter preference towards voting absentee," they intended to "focus significant time and resources on organizing their members and communities . . . to vote absentee." (Compl., R. 1, PageID# 9.) This process, they further alleged, "will necessarily include discussing with voters the benefits of voting by mail, reminding eligible absentee voters about application and ballot submission deadlines and requirements, and following up with voters to ensure their ballots were received, cast[,] and counted." (*Id.*) And "as a key part of this absentee voter engagement," Plaintiffs desired to "provide potential absentee

12

voters with . . . blank absentee ballot applications." (*Id.*)  Plaintiffs alleged that doing so was "necessary because [they] have found that their voter engagement efforts are significantly more effective when they are able to provide voters with all of the information and requisite forms they might need to . . . request to vote absentee." (*Id.*)

The distribution of Tennessee's absentee-ballot-application forms, though, lacks "sufficient communicative elements to bring the First Amendment into play." *See Johnson*, 491 U.S. at 404.   "Conduct does not become speech for First Amendment purposes merely because the person engaging in the conduct intends to express an idea." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) (citing *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 66 (2006)). Instead, there must also be a great likelihood that the recipients of the absentee-ballot-applications would understand Plaintiffs' message. *See Johnson*, 491 U.S. at 404.  And it is this requirement that Plaintiffs' allegations failed to satisfy.

The First Amendment protects conduct only when it is "inherently expressive." *Rumsfeld*, 547 U.S. at 66.  So when considering whether there is a great likelihood that a message will be received through conduct, courts seek to determine whether that conduct is in fact inherently expressive. *See, e.g.*, *Johnson*, 491 U.S. at 406 (observing that "Johnson's burning of the flag was conduct sufficiently imbued with elements of communication to implicate the First Amendment" (cleaned up)).

13

But when an individual's conduct is "expressive only because [they] accompan[y] their conduct with speech explaining it," the First Amendment will provide no protection. *Rumsfeld*, 547 U.S. at 66. That is why the Supreme Court held in *Rumsfeld* that law schools' decisions to restrict the access of military recruiters to their students were not protected by the First Amendment. *Id.* at 51, 65–66. "The expressive component of a law school's actions," the Court explained, "is not created by the conduct itself but by the speech that accompanies it." *Id.* at 66. And "[t]he fact that such explanatory speech is necessary is strong evidence that the conduct at issue . . . is not so inherently expressive that it warrants [Constitutional] protection." *Id.* Indeed, "[i]f combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Id.*

The district court correctly applied these principles to conclude that there was no great likelihood that the distribution of blank absentee-ballot applications would be understood to convey Plaintiffs' message. "The Supreme Court has advised that if an observer cannot tell, without accompanying words, that the action conveys the message the plaintiff claims it conveys, then the action is not inherently expressive." (Mem. Op. Den. Mot. for Prelim. Inj., R. 44, PageID# 430.) The district court observed, for instance, that flag-burning is an action that would be "widely and objectively understood to be expressing some kind of disapproval or protest of, or

14

objection towards, the United States or the federal government" even "if [the flag burner] says nothing at all." (*Id.* at PageID# 429.) The distribution of absentee-ballot applications, by contrast, is not so understood. "[I]f unaware of any words accompanying such distribution," the district court reasoned, "an observer would not have any particular reason to associate any specific message with the action of giving someone an absentee ballot application." (*Id.*) Accordingly, the district court concluded that distribution of absentee-ballot applications was not inherently expressive, and thus was not entitled to First Amendment protection. (*Id.* at PageID# 436–37.)

### 2.    Decisions of other courts do not support Plaintiffs' argument.

Plaintiffs contend that other courts have consistently found similar conduct expressive. (Br. Plaintiffs-Appellants, 16.) But in nine of the cases that Plaintiffs cite, the courts made no attempt to apply *Johnson*'s two-part test to determine whether the prohibited conduct at issue was "inherently expressive."[2] These nine

---

[2] *See Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 812 (E.D. Mich. 2020) (concluding that the conduct at issue was entitled to First Amendment protection without applying *Johnson*'s two-part test to determine whether that conduct was expressive); *VoteAmerica v. Raffensperger*, No. 1:21-cv-1390, slip op. at 9–13 (N.D. Ga. Dec. 9, 2021) (same); *DSCC v. Simon*, No. 62-CV-20-585, 2020 WL 4519785, at *27–30 (Minn. Dist. Ct. July 28, 2020) (same); *Tenn. State Conf. of NAACP. v. Hargett*, 420 F. Supp. 3d 683, 698–711 (M.D. Tenn. 2019) (same); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 700–07 (N.D. Ohio 2006) (same); *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1158–59, 1163 (N.D. Fla. 2012) (same); *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1333–34

decisions, then, hardly support Plaintiffs' assertion that "courts have consistently found" conduct like the distribution of absentee-ballot applications to be "expressive."

The remaining decisions Plaintiffs cite likewise fail to aid their cause. First, Plaintiffs rightly point out that in *VoteAmerica v. Schwab*, No. CV 21-2253-KHV, 2021 WL 5918918 (D. Kan. Dec. 15, 2021), an unpublished, out-of-circuit decision, the district court preliminary enjoined a Kansas law limiting the distribution of absentee-ballot applications. (Br. Plaintiffs-Appellants, 16.) But Plaintiffs do not acknowledge that the court in *VoteAmerica* expressly distinguished the conduct at issue there from the conduct Plaintiffs seek to engage in here. *See* 2021 WL 5918918, at *6 ("Plaintiffs correctly respond that *Lichtenstein* is not germane because their application packets include speech that communicates a pro-mail voting message."). What is more, the law at issue in *VoteAmerica* targeted only non-resident speakers and pro-mail-voting messages. *See id.* at *1, *6. Tennessee's law,

---

(S.D. Fla. 2006) (same); *Meyer v. Grant*, 486 U.S. 414, 421 (1988) (analyzing petition circulation not as expressive conduct, but instead as speech that "of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change"); *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 186 (1999) (declining to analyze petition circulation as expressive conduct and treating it as speech). Finally, in *League of Women Voters of Florida v. Browning*, 575 F. Supp. 2d 1298, 1319 (S.D. Fla. 2008), the court actually "agree[d]" with the defendants that the conduct at issue—"the collection and handling of voter registration applications"—was "not inherently expressive activity." The court, however, reached this conclusion without analysis and proceeded to address the law under the *Anderson-Burdick* framework. *See id.*

by contrast, is a facially neutral prohibition on distributing a single state-created form, no matter the reason.

Second, Plaintiffs say that in *Democracy North Carolina v. North Carolina State Board of Elections*, 476 F. Supp. 3d 158 (M.D.N.C. 2020), the district court found "that assisting voters in filling out a request form for an absentee ballot is 'expressive conduct' which implicates the First Amendment." (Br. Plaintiffs-Appellants, 17 (quoting *Democracy N. Carolina*, 476 F. Supp. 3d at 224).) This is true, but it does not help Plaintiffs here, since the Tennessee statute does not prohibit them from assisting anyone with anything, or from communicating any message at all.

Third, Plaintiff assert that in *Steen*, 732 F.3d at 382, an "outlier case" upholding limits on voter-registration drives, the Fifth Circuit "acknowledged that the distribution of blank voter registration forms was expressive conduct protected by the First Amendment." (Br. Plaintiffs-Appellants, 19.) But Plaintiffs read too much into this case, because whether distribution of blank voter-registration forms is expressive conduct was not even at issue. The court did not "acknowledge[] that the distribution of blank voter registration forms was expressive conduct," as Plaintiffs say; it acknowledged only that Texas *did not deny* that the distribution of these forms was expressive and that Texas "neither regulate[d] nor limit[ed]" that conduct. *See Steen*, 732 F.3d at 389.

### 3.    The district court did not misapply the motion-to-dismiss standard.

Plaintiffs also contend that the district court "misapplied the standard for motions to dismiss and the test for expressive conduct." (Br. Plaintiffs-Appellants, 22 (capitalization normalized).)  In concluding that the challenged law does not prohibit expressive conduct, Plaintiffs argue, "the district court committed numerous errors." (Br. Plaintiffs-Appellants, 23.)  Plaintiffs are wrong.

Four of the "errors" Plaintiffs identify relate to the way the district court applied the standards for motions to dismiss.  (Br. Plaintiffs-Appellants, 23–26.) Plaintiffs say that the district court erred by incorporating its reasoning at the preliminary-injunction stage in its motion-to-dismiss ruling, and that in doing so, the court "shifted the burden" from Defendants to Plaintiffs and "necessarily considered evidence that went well beyond the pleadings." (Br. Plaintiffs-Appellants, 24–25.) But Plaintiffs do not explain *how* the district court shifted the burden or *how* its consideration of evidence at the preliminary-injunction stage improperly contributed to its ruling on Defendants' motion to dismiss.  Nor could they.

In ruling on Defendants' motion to dismiss, the district court carefully (and correctly) set out the relevant legal standards for such a motion.  (*See* Mem. Op. Granting Mot. to Dismiss, R. 56, PageID# 528–30.)  The court also expressly acknowledged the different standard at the motion-to-dismiss stage and explained that "[w]hile [its] discussion in the Preliminary Injunction Opinion involved a

review of materials outside of the four corners of the Complaint (i.e., Defendant Goins' declaration as to an asserted state interest), those same burdens and state interests that [it] discussed in the Preliminary Injunction Opinion can easily 'be gleaned from the face of the challenged law[.]'" (*Id.* (quoting *Daunt v. Benson*, 999 F.3d 299, 314 (6th Cir. 2021)).)

Next, Plaintiffs suggest that the district court "disregard[ed] nearly all of [their] factual allegations." (Br. Plaintiffs-Appellants, 23.) But Plaintiffs acknowledge, as they must, that whether conduct is expressive is a question of law and that this is why the district court "treated all of their allegations related to the expressive content of their conduct as 'legal conclusions.'" (Br. Plaintiffs-Appellants, 23, 24.) Still, they insist that "[e]ven if an ultimate issue is one of law," a court may not disregard relevant factual allegations as legal conclusions. (Br. Plaintiffs-Appellants, 23, 24.) The district court, though, expressly concluded that "Plaintiffs as a matter of law cannot succeed on their claim, even accepting as true everything in the Complaint that the Court is required . . . to accept as true." (Mem. Op., R. 56, PageID# 540.) And Plaintiffs do not identify a single *factual* allegation that they claim was improperly disregarded as a legal conclusion.

Plaintiffs also say that the district court failed to draw reasonable inferences in their favor. (Br. Plaintiffs-Appellants, 25–26.) But courts may draw reasonable inferences only from the factual allegations in a plaintiff's complaint. *See Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). And here, Plaintiffs never alleged, as a factual matter, that people who are handed blank absentee-ballot applications are likely to understand any particular message. (*See generally* Compl., R. 1, PageID# 1–13.) Instead, Plaintiffs alleged that if they cannot hand out the applications, fewer people might ultimately apply for absentee ballots. (*Id.* at PageID# 9–11.) But even accepting that allegation as true, it does not lead to the "reasonable inference" that Plaintiffs' message would be conveyed through the distribution of the applications— i.e., that the distribution of the applications is inherently expressive. And that, of course, is what matters. *See Rumsfeld*, 547 U.S. at 66 (explaining that the First Amendment protects conduct only when it is "inherently expressive").

Finally, Plaintiffs argue that "the district court's analysis fails to comport with the governing precedent on expressive conduct." (Br. Plaintiffs-Appellants, 26.) They complain that the district court "reached its conclusion that distribution of absentee ballot applications is not 'inherently expressive' by divorcing the prohibited activity from its context," and that "Supreme Court precedent mandates the opposite." (Br. Plaintiffs-Appellants, 26.) But Plaintiffs misplace their reliance on this "Supreme Court precedent."

Plaintiffs say that in *Johnson*, 491 U.S. 397, and *Spence*, 418 U.S. 405, the Supreme Court considered the context in which conduct occurred when determining

whether that conduct was expressive enough to warrant constitutional protection.[3]

(Br. Plaintiffs-Appellants, 26 (citing *Johnson*, 491 U.S. at 405; *Spence*, 418 U.S. at

410).)  But *Johnson* and *Spence* differ from this case in an important way: both cases

dealt with the American flag.  *See Johnson*, 491 U.S. at 399; *Spence*, 418 U.S. at

405.  And that the Supreme Court "had little difficulty in identifying an expressive

element in conduct relating to flags should not be surprising."  *Johnson*, 491 U.S. at

405.  "The very purpose of a national flag," the Supreme Court observed, "is to serve

as a symbol of our country; it is, one might say, the one visible manifestation of two

hundred years of nationhood."  *Id.* (cleaned up); *see also Spence*, 418 U.S. at 410

(recognizing that "[i]n many of their uses flags are a form of symbolism comprising

a 'primitive but effective way of communicating ideas'" and "'a short cut from mind

to mind'" (citation omitted)).  The same can hardly be said about Tennessee's

absentee-ballot applications.  Unlike the American flag, these applications have no

inherent symbolic value and are certainly not "[p]regnant with expressive conduct."

*Johnson*, 491 U.S. at 405.  So while conduct "taken with respect to our flag" can

---

[3] While the Supreme Court did discuss the expressive nature of the conduct at issue in *Johnson* and *Spence*, the states had conceded in both cases that the conduct was expressive and communicative.  *See Johnson*, 491 U.S. at 405 ("The State of Texas conceded for purposes of its oral argument in this case that Johnson's conduct was expressive conduct."); *Spence*, 418 U.S. at 409 ("[T]he State concedes . . . that appellant engaged in a form of communication.").

easily be rendered expressive through context, *see id.*, it does not follow that the distribution of absentee-ballot applications can too.

*Johnson* and *Spence* also differ from this case in another way: the plaintiffs in those cases did not control the entire context in which their conduct occurred. In *Johnson*, for instance, the Court observed that the plaintiff had "burned an American flag as part—indeed, as the culmination—of a political demonstration that coincided with the convening of the Republican Party and its renomination of Ronald Reagan for President." 491 U.S. at 406. And in *Spence*, the plaintiff's taping of a peace sign to his flag was "roughly simultaneous with and concededly triggered by the Cambodian incursion and the Kent State tragedy." 418 U.S. at 410. So while the Supreme Court did consider context in determining whether the conduct at issue in those cases was expressive, at least part of that context—the then-current political climate—was not manufactured by the plaintiffs.

This aspect of the context in *Johnson* and *Spence* is easily distinguished from the context Plaintiffs point to here: voter-outreach events that they themselves orchestrate. That sort of plaintiff-manufactured context cannot be enough to render conduct expressive. *Cf. Rumsfeld*, 547 U.S. at 66 (reasoning that "[i]f combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it"); *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 297–98 (1984) (concluding that

22

the activity of camping did not gain First Amendment protection simply because the campers wished to do so as part of a political demonstration).

The district court rightly concluded that the conduct Plaintiffs seek to engage in—the distribution of Tennessee's absentee-ballot applications—is not inherently expressive and is therefore not protected by the First Amendment.

**B.    The distribution of absentee-ballot applications is not speech.**

Plaintiffs argue that the distribution of Tennessee's absentee-ballot applications is speech protected by the First Amendment.  More specifically, they contend that the distribution of these applications is "core political speech" of the sort "entitled to the greatest protections under our laws."  (Br. Plaintiffs-Appellants, 28–30.)  This contention is plainly wrong.

As the district court rightly recognized, Tenn. Code Ann. § 2-6-202(c)(3) "prohibits no spoken or written expression whatsoever."  (Mem. Op. Den. Mot. for Prelim. Inj., R. 44, PageID# 425.)  The law thus regulates conduct—not speech.  *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 25 (2010) (holding that a law which permitted plaintiffs to "say anything they wish on any topic" and did "not prohibit independent advocacy or expression of any kind" did not regulate political speech); *Rumsfeld*, 547 U.S. at 60 (reasoning that a law that "affect[ed] what law schools must *do*," not "what they may or may not *say*" regulated "conduct, not speech" (emphasis in original)); *see also Telescope Media Grp. v. Lucero*, 936 F.3d 740, 772

23

(8th Cir. 2019) (concluding that a law that "on its face" neither "regulate[ed] speech [n]or dr[ew] distinctions based on a speaker's message" regulated "conduct, not speech").

And conduct—even expressive conduct—does not become core political speech simply because of the context in which it occurs. Core political speech, the Supreme Court has explained, involves "interactive communication concerning political change." *Meyer*, 486 U.S. at 422. Plaintiffs have alleged that they engage in this sort of interactive communication during their voter-outreach events. (Compl., R. 1, PageID# 8–9.) And they have further alleged that it is in the context of these events that they wish to distribute absentee-ballot applications. (*Id.* at PageID# 9–10.) But these facts do not transform the act of distributing absentee-ballot applications into core political speech. The First Amendment "does not protect any conduct that at some point might have a *connection* to speech." *Sickles v. Campbell Cnty., Ky.*, 501 F.3d 726, 734 (6th Cir. 2007) (emphasis added); *see also O'Brien*, 391 U.S. at 376 (rejecting "the view that an apparently limitless variety of conduct can be labeled 'speech'"). And that remains true even when the accompanying speech is political. *See Holder*, 561 U.S. at 25–26 (concluding that where "Congress has not . . . sought to suppress ideas or opinions in the form of 'pure political speech,'" but to prohibit an activity "which most often does not take the form of speech at all," the First Amendment's protection of core political speech

24

is not implicated); *Cf. Johnson*, 491 U.S. at 406 (1989) (acknowledging that flag burning was "expressive" and "overtly political," but declining to analyze that conduct as speech).

Plaintiffs insist otherwise, relying on the Supreme Court's decision in *Meyer*. There, they say, the Supreme Court "held that circulation of initiative petitions for signature is expressive, core political speech." (Br. Plaintiffs-Appellants, 28.) But *Meyer* is patently distinguishable.

Circulating initiative petitions has little in common with handing out copies of a state-created absentee-ballot application. The circulation of petitions, the Supreme Court recognized in *Meyer*, "*of necessity* involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421 (emphasis added). The Fifth Circuit, in rejecting an argument much like the one Plaintiffs make here, put it this way: "[t]he circulation and submission of an initiative petition is closely intertwined with the underlying political ideas put forth by the petition." *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 898 n.13 (5th Cir. 2012). "The petition itself," in other words, "is the protected speech." *Id.* The same cannot be said about Tennessee's absentee-ballot application—a state-created form. Unlike an initiative petition, that form is not conveying the speech of the distributor. *See Steen*, 732 F.3d at 390 (explaining that "[p]etitions by themselves are protected speech, and unlike a completed voter

registration form, they are the circulator's speech"). Nor does the act of handing

someone a copy of the form "of necessity" involve the expression of a desire for

political change and a discussion of the merits of that change. *See Meyer*, 486 U.S.

at 421.

The differences between the circulation of initiative petitions and the

distribution of absentee-ballot applications are underscored by comparing the effects

of the law at issue in *Meyer* with the effects of Tennessee's law. The Supreme Court

in *Meyer* concluded that "[t]he refusal to permit [the plaintiffs] to pay petition

circulators restrict[ed] political expression in two ways." 486 U.S. at 422. First, it

limited "the number of voices who [would] convey [the plaintiffs'] message and the

hours they [could] speak and, therefore, limit[ed] the size of the audience they

[could] reach." *Id.* at 423. And second, it made it "less likely that [the plaintiffs]

[would] garner the number of signatures necessary to place the matter on the ballot,

thus limiting their ability to make the matter the focus of statewide discussion." *Id.*

Tennessee's law, by contrast, places no limits on how many people can convey

Plaintiffs' message or when they can do so. Nor does it limit the reach of their

message by preventing it from becoming a focus of statewide discussion. In short,

Tennessee's law, unlike the law at issue in *Meyer*, does nothing to "reduc[e] the total quantum of speech on a public issue."[4]  *Id.* at 423.

The district court, then, was also right to conclude that the challenged law did not limit speech—let alone core political speech.

### C.    The distribution of absentee-ballot applications is not expressive association.

Pointing to a separate right-of-association claim, Plaintiffs argue that they stated a claim for relief because the distribution of absentee-ballot applications implicates their First Amendment right to freedom of association.  (Br. Plaintiffs-

---

[4] The other cases Plaintiffs rely on in support of this argument are similarly distinguishable.  (*See* Br. Plaintiffs-Appellants, 28–30.)  Those cases, without exception, involved laws that—like the one at issue in *Meyer*—"reduc[ed] the total quantum of speech on a public issue."  *See Citizens for Tax Reform*, 518 F.3d at 388 (concluding that the challenged law made "speech more costly" and thus "virtually guarantee[d] that there [would] be less of it"); *League of Women Voters*, 400 F. Supp. 3d at 723 (determining that *Meyer*'s "speech diminution rationale [could] easily be applied to the [challenged law's] restrictions on voter registration drives"); *League of Women Voters of Fla.*, 447 F. Supp. 2d at 1332 (explaining that the challenged law, like the law in *Meyer*, "reduced the total quantum of speech"); *VoteAmerica*, 2021 WL 5918918, at *17 (concluding that the challenged law limited "the overall quantum of speech available" by "significantly inhibit[ing] communication with voters about proposed political change and eliminat[ing] voting advocacy by plaintiffs and other out-of-state entities, based on the content of their message and the residency of the advocate"); *Emily's List v. Fed. Election Comm'n*, 581 F.3d 1, 7 (D.C. Cir. 2009) (observing that the Supreme Court has rejected limits on political expenditures and pointing out that a "restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached" (citation omitted)).

27

Appellants, 30–33.)  This argument fails as well, though, so the district court did not err when it dismissed Plaintiffs' complaint in its entirety.[5]

The First Amendment "extends beyond the right to speak and encompasses the 'right of expressive association,' i.e., the 'right to associate for the purpose of speaking.'"  *Miller v. City of Cincinnati*, 622 F.3d 524, 537 (6th Cir. 2010) (quoting *Rumsfeld*, 547 U.S. at 68).  That right of expressive association "protects a group's membership decisions and also protects against laws that make group membership less attractive without directly interfering with an organization's composition, such as requiring groups to disclose their membership lists or imposing penalties based on membership in a disfavored group."  *Id.* (cleaned up).

When analyzing claims based on this right of association, this Court employs a "three-step process."  *Id.*  First, the Court asks "whether a group is entitled to protection."  *Id.* (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000)).  The next inquiry is whether "the government action in question 'significantly burdens'

---

[5] Plaintiffs and their amicus point out that the district court did not separately analyze Plaintiffs' right-of-association claim in its opinion.  (Br. Plaintiffs-Appellants, 32–33; Br. Amicus Curiae CATO Inst., 7.)  That fact, though, does not require reversal. This Court reviews a district court's grant of a motion to dismiss de novo.  *See Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 511 (6th Cir. 2020).  And "this [C]ourt's de novo review involves only application of legal propositions to the undisputed facts in the record," so it "may affirm on any grounds supported by the record even if different from the reasons of the district court."  *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).  Here, the application of settled legal propositions confirms that Plaintiffs have failed to state a right-of-association claim.

the group's expression." *Id.* (citing *Boy Scouts of Am.*, 530 U.S. at 653).  And finally, this Court weighs "the government's interest in any restriction" against the plaintiff's "right of expressive association."  *Id.* (citing *Boy Scouts of Am.*, 530 U.S. at 656).

Plaintiffs' right-of-association claim fails at the second step of this process— nothing in Tenn. Code Ann. § 2-6-202(c)(3) "significantly burdens" their expression. *See id.*  Plaintiffs alleged that the challenged law "unconstitutionally infringes on the Organizational Plaintiffs' First Amendment right to the freedom of association" because "the threat of criminal sanctions imposed by [the law] extends to the Organizational Plaintiffs' members, who would themselves also conduct voter outreach activity like providing the absentee ballot application the State makes available online to potentially eligible voters."  (Compl., R. 1, PageID# 12.) Plaintiffs also suggested that the challenged law's "criminal prohibition on assisting voters in obtaining absentee ballot applications chills Plaintiffs' . . . associational activities[] and prohibits them from fully engaging their members and other eligible absentee voters and facilitating their ability to obtain an absentee ballot application and vote by mail."  (*Id.* at PageID# 10–11.)

But as this Court has noted, "[a] government action does not interfere with the right of expressive association unless it directly or indirectly interferes with group membership." *Miller*, 622 F.3d at 538; *see also Rumsfeld*, 547 U.S. at 69 (observing

that laws have been held unconstitutional when "they made group membership less attractive, raising the same First Amendment concerns about affecting the group's ability to express its message"). And nowhere in Plaintiffs' complaint did they allege that the challenged law somehow interferes with group *membership*. Rather, their allegations focused on the ways that the statute supposedly hinders their efforts to get their existing members and others to apply to vote absentee. (*See* Compl., R. 1, PageID# 9–11.) For that reason, Plaintiffs' right-of-association claim must fail. *See Miller*, 622 F.3d at 538 (concluding that "the plaintiffs' expressive association claim fail[ed] because nothing in [the challenged regulation] affect[ed] the[ir] internal membership decisions.")

The district court was therefore right to dismiss Plaintiffs' entire complaint. Even though the district court did not separately analyze Plaintiffs' right-of-association claim, this Court may—and should—affirm the judgment of dismissal as to this claim too.[6]

*         *         *

In sum, the district court correctly concluded that the distribution of absentee-ballot applications is neither expressive conduct nor core political speech. The court was likewise right in determining that the challenged law does not implicate Plaintiffs' right of association. The First Amendment, then, does not apply to the

---

[6] *See supra* note 5.

conduct Plaintiffs seek to engage in. So they did not—and cannot—state claims for violation of the First Amendment.

This result makes perfect sense. If Plaintiffs' arguments were accepted, there would be no limit to what the First Amendment might protect. Plaintiffs say that without the ability to distribute absentee-ballot applications, their voter-engagement efforts will be less effective and fewer people will ultimately cast absentee ballots. (Br. Plaintiffs-Appellants, 15.) But the First Amendment guarantees the right to convey messages, not to achieve goals. If it were otherwise—if the First Amendment guaranteed not only the ability to convey a message, but the right to have that message be *effective*—then *anti*-voting groups would have the right not only to say that people should not vote, but to actually reduce voter turnout. *See Steen*, 732 F.3d at 391 n.5. Nothing in the First Amendment compels *that* result.

## II. Even If the First Amendment Did Apply, the Challenged Law Would Still Survive.

Even if this Court were to conclude that the district court was wrong in finding that the distribution of absentee-ballot applications is not protected by the First Amendment, the judgment of dismissal should still be affirmed. As the district court also concluded, under an alternative analysis, Tenn. Code Ann. § 2-6-202(c)(3) does not violate the First Amendment. (Mem. Op. Granting Mot. to Dismiss, R. 56, PageID# 527–28.)

If the First Amendment applies here, the necessary first step is to determine the appropriate level of scrutiny. *See Andrade*, 488 F. App'x at 895 (citing *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008)). But as the district court observed, that is no easy task given the "bewildering array of standards to choose from." (Mem. Op. Den. Mot. for Prelim. Inj., R. 44, PageID# 413 (quoting *Tenn. State Conf. of NAACP*, 420 F. Supp. 3d at 701).) This Court, though, need not make that choice in a vacuum. Instead, existing precedent offers two ways to proceed, depending on the basis for determining that the First Amendment applies.

*First*, if this Court determines that the First Amendment applies because the challenged law restricts expressive conduct, the Supreme Court's opinion in *Texas v. Johnson* would provide the proper framework. Under that framework, the next step is to "decide whether the [challenged law] is related to the suppression of free expression." *Johnson*, 491 U.S. at 403 (citations omitted). If the law "is not related to expression," then the less stringent standard . . . announced in [*O'Brien*] controls."[7] *Id.* In *O'Brien*, 391 U.S. 367, the Supreme Court "rejected a First Amendment challenge to a conviction under a generally applicable prohibition on

---

[7] The district court did not apply *O'Brien*, nor did any party argue for its application below. But this Court can still apply it if it concludes that the distribution of absentee-ballot applications is expressive conduct. Parties, this Court has recognized, "cannot 'waive' the proper standard of review by failing to argue it." *Brown v. Smith*, 551 F.3d 424, 427 n.2 (6th Cir. 2008); *see also Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018) (recognizing that "parties cannot waive the application of the correct law or stipulate to an incorrect legal test").

destroying draft cards, even though the [plaintiff] had burned his card in protest of the draft." *Holder*, 561 U.S. at 26. The Supreme Court reasoned that the law at issue "condemn[ed] only the noncommunicative impact of conduct within its reach." *O'Brien*, 391 U.S. at 382. In other words, the law was "not related to expression." *Johnson*, 491 U.S. at 403.

The same is true here. Like the law at issue in *O'Brien*, which was a "generally applicable prohibition on destroying draft cards," § 2-6-202(c)(3) is a generally applicable prohibition on the distribution of absentee-ballot applications. The law draws no message-based distinctions of any kind; as Plaintiffs' own amicus points out, the statute prohibits the distribution of applications "to anyone else for any reason." (Br. Amicus Curiae CATO Inst., 1.) Consequently, if the distribution of absentee-ballot applications is expressive conduct, Tennessee's generally applicable prohibition of that conduct is subject to the "less stringent" standard announced in *O'Brien*, i.e., intermediate scrutiny. *See Johnson*, 491 U.S. at 403; *see also Holder*, 561 U.S. at 26–27 (explaining that the standard applied in *O'Brien* has since been called intermediate scrutiny).

*Second*, if this Court determines that the First Amendment applies because the challenged law is properly viewed as an election law, *Anderson-Burdick* would provide the proper framework. *See Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir. 2019) (noting that this Court "generally evaluate[s] First Amendment challenges to

33

state election regulations under the three-step *Anderson-Burdick* framework"). Under that framework, the level of scrutiny courts "apply to 'state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights.'" *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020) (per curiam) (quoting *Burdick*, 504 U.S. at 434). If "the burden is severe, the state must narrowly draw the regulation to serve an 'interest of compelling importance.'" *Id.* (citation omitted). But if "the law imposes 'reasonable, nondiscriminatory restrictions,'" it will be subjected only "to rational-basis review." *Id.* (citation omitted). And in cases falling between these two ends of the spectrum, where the law imposes an "intermediate burden," courts weigh that burden "against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Id.* at 616 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

Here the burden is minimal. Section 2-6-202(c)(3) prohibits no spoken or written expression; it prohibits only the distribution of a single state-created document. It therefore imposes only "reasonable, nondiscriminatory restrictions." *See Thompson*, 976 F.3d at 615; (*see also* Mem. Op. Den. Mot. for Prelim. Inj., R. 44, PageID# 446 (reasoning that a "burden is considered light if the plaintiffs' rights are subjected only to reasonable, nondiscriminatory restrictions" (cleaned up))). It follows that any burdens imposed are minimal, and the law should therefore be subjected only "to rational-basis review." *See Thompson*, 976 F.3d at 615. But even

if the burden were deemed to be moderate, the law would need only to survive intermediate scrutiny. *See id.* at 615–16.

Accordingly, no matter which way the Court proceeds—under *Texas v. Johnson* or under *Anderson-Burdick*—the outcome is the same: the law is subject to, at most, intermediate scrutiny.[8]  Under that standard, "a content-neutral regulation will be sustained . . . if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Holder*, 561 U.S. at 26–27 (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997)).  Section 2-6-202(c)(3) easily satisfies that standard.

As Defendants explained below, the challenged law furthers at least two state interests: preventing voter confusion and protecting the integrity of elections.  (Mem. in Supp. of Mot. to Dismiss, R. 47, PageID# 478–89).  The law furthers these interests by ensuring that (a) the voter requested the application; (b) the application provided is the correct form; (c) the application is not pre-filled; (d) it is clear to the voter that the application is being provided by the government; and (e) the application does not come with any incorrect or misleading information or

---

[8] Plaintiffs insist that there is another option: strict, or so-called "exacting" scrutiny under *Meyer*.  (Br. Plaintiffs-Appellants, 33–34.)  But that standard applies to core political speech, and as discussed above, the challenged law does not limit speech at all, let alone core political speech.  So *Meyer* does not apply.

instructions not provided by State and county election officials. (*Id.* at PageID# 479–80.)

These interests are plainly important. *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006) (referring to "the important state interest in avoiding voter confusion"); *John Doe No. 1 v. Reed*, 561 U.S. 186, 197 (2010) (recognizing that "[t]he State's interest in preserving the integrity of the electoral process is undoubtedly important"). And they are wholly "unrelated to the suppression of free speech." *See Holder*, 561 U.S. at 27. Both interests deal with the integrity of the election process—by authorizing only election-commission employees to distribute absentee-ballot applications, the law reduces the likelihood of harmful "secondary effects" that might result from non-governmental distribution of absentee-ballot applications. *Cf. City of Erie v. Pap's A.M.*, 529 U.S. 277, 294 (2000) (explaining that "[t]he justification for the government regulation" in *O'Brien* was "prevent[ing] harmful 'secondary effects' that [were] unrelated to the suppression of expression"); *Ward v. Rock Against Racism*, 491 U.S. 781, 791–92 (observing that "[t]he principal justification for the sound-amplification guideline is the city's desire to control noise levels" and reasoning that "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others").

36

Meanwhile, the challenged law imposes minimal burdens, as discussed above. Plaintiffs claim that because of the challenged law, they are "forbidden from leveraging their resources—including the ability to download and print an application for an organizational member or community member who lacks access to the Internet or a printer—to ensure that voters who need and want to apply for an absentee ballot can do so." (Compl., R. 1, PageID# 10.) They also claim that the law hampers their ability to engage with "their members and other eligible absentee voters" by helping them obtain absentee-ballot applications, and that it limits their ability to "plan and execute voter engagement strategies." (*Id.* at PageID# 11.)

But even if these burdens exist, they are not burdens on expressive conduct, speech, or association. And even if they were, they would not be severe. *See Thompson v. DeWine*, 959 F.3d 804, 810 (6th Cir. 2020) (per curiam) (determining that a burden was "less than severe" after "[c]onsidering all opportunities [p]laintiffs had, and still have, to exercise their rights"). Again, § 2-6-202(c)(3) prohibits no written or spoken communication of any kind, nor does it prohibit interaction or association with anyone. It constitutes a narrow prohibition of the distribution of a single state-created document—one that can be freely obtained from the State. *See* Tenn. Code Ann. § 2-6-202(a)(1), (3).

Plaintiffs maintain that the law imposes heavy burdens by rendering their voter-engagement efforts less "effective." (Compl., R. 1, PageID# 9; Br. Plaintiffs-

37

Appellants, 15.)  But Plaintiffs conflate their right to convey a message—something the First Amendment protects—with an imagined right to achieve the goal they advocate—something the First Amendment can never protect.  *See Steen*, 732 F.3d at 394 (explaining that the plaintiffs' "claim that they *may* be less successful in achieving the *result* they advocate or in running a registration drive in the precise way they prefer does not demonstrate that their *ability* to advocate is significantly burdened by [the law at issue]" (emphasis in original)).  As the Fifth Circuit observed, "the First Amendment protects the right to express political views," but "nowhere does it guarantee the right to ensure those views come to fruition."  *Id.* at 391 n.5.  "To maintain otherwise," the court continued, "would mean that a group seeking to discourage voting and voter registration would have the 'right' to achieve its expressive goals by throwing the registration cards away."  *Id.*

At bottom, the light burdens imposed by the challenged law are easily outweighed by the State's important and well-established interests in preventing voter confusion and protecting election integrity.  It follows that the law survives intermediate scrutiny, and, by extension, any lower standard that could feasibly apply.  So even if this Court determines that Plaintiffs' First Amendment rights are implicated here, it should still affirm the dismissal of their claims.

## CONCLUSION

For the reasons stated, the judgment of the district court should be affirmed.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

ANDRÉE S. BLUMSTEIN
Solicitor General

JANET M. KEINFELTER
Deputy Attorney General

ALEXANDER S. RIEGER
Senior Assistant
Attorney General

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General

P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov

*Counsel for Defendants-Appellees*

May 9, 2022

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,797 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General

May 9, 2022

## CERTIFICATE OF SERVICE

I, Matthew D. Cloutier, counsel for Defendant-Appellees and a member of the Bar of this Court, certify that, on May 9, 2022, a copy of the Brief of Defendants-Appellees was filed electronically through the appellate CM/ECF system with the Clerk of the Court.  I also certify that all parties required to be served have been served.

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General

# DESIGNATION OF DISTRICT COURT DOCUMENTS

*Lichtenstein, et al. v. Hargett, et al.,*
No. 3:20-cv-00736 (M.D. Tenn.)

| Docket Entry No. | Description | Page ID # |
|---|---|---|
| 1 | Plaintiffs' Complaint | 1–13 |
| 11 | Plaintiffs' Motion for Preliminary Injunction | 43–45 |
|  | Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction | 194–215 |
| 44 | Memorandum Opinion Denying Plaintiffs' Motion for Preliminary Injunction | 398–463 |
| 46 | Defendants' Motion to Dismiss | 465–67 |
| 47 | Defendants' Memorandum in Support of Motion to Dismiss | 468–84 |
| 56 | Memorandum Opinion Granting Defendants' Motion to Dismiss | 525–88 |
| 57 | Order Granting Defendants' Motion to Dismiss | 589 |
| 59 | Notice of Appeal | 591–92 |