# CASE NO. 22-5028

# IN THE
# United States Court of Appeals
# FOR THE SIXTH CIRCUIT

**JEFFERY LICHTENSTEIN, et al.,**
*Plaintiffs-Appellants,*

v.

**TRE HARGETT, et al.,**
*Defendants-Appellees.*

On Appeal from the Judgment of the United States District Court
For the Middle District of Tennessee
Originating Case No. 3:20-CV-00736

**BRIEF OF PUBLIC INTEREST LEGAL FOUNDATION
AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES
AND AFFIRMANCE**

CHARLOTTE DAVIS, TN BPR No. 34204
PUBLIC INTEREST LEGAL FOUNDATION
32 E. Washington Street, Suite 1675
Indianapolis, IN 46204
317-203-5599, ext. 113
cdavis@publicinterestlegal.org
*Counsel for Amicus Curiae*

BRADLEY J. SCHLOZMAN, KS Bar No. 17621
HINKLE LAW FIRM LLC
1617 N. Waterfront Pkwy, Ste 400
Wichita, KS 67206
316-660-6296
bschlozman@hinklaw.com
*Counsel for Amicus Curiae*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-5028        Case Name: Jeffrey Lichtenstein, et al. v. Tre Hargett,

Name of counsel: Charlotte Davis

Pursuant to 6th Cir. R. 26.1, Public Interest Legal Foundation
                              *Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

---

**CERTIFICATE OF SERVICE**

I certify that on _____May 16, 2022_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Charlotte Davis

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL

    INTEREST.................................................................................................. ii

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHERITIES ............................................................................ iv

IDENTITY, INTEREST, AND SOURCE OF AUTHORITY TO FILE OF

    *AMICUS CURIAE*........................................................................................ 1

SUMMARY OF ARGUMENT ......................................................................... 3

ARGUMENT ................................................................................................... 4

CONCLUSION…………….............................................................................10

CERTIFICATE OF COMPLIANCE ................................................................11

CERTIFICATE OF SERVICE .........................................................................12

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS BY

    *AMICUS CURIAE*.......................................................................................13

CERTIFICATE OF DESIGNATION ...............................................................13

# TABLE OF AUTHORITIES

**CASES**

*Buckley v. Valeo*,
  424 U.S. 1 (1976)……………………………………………………………….6

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)……………………………………………………………..6-7

*Meyer v. Grant*,
  486 U.S. 414 (1988)……………………………………………………………..7-8

*R. A. V. v. St. Paul*,
  505 U.S. 377 (1992)……………………………………………………………….6

*Storer v. Brown*,
  415 U.S. 724 (1974)……………………………………………………………….8

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997)……………………………………………………………..7-8

*Voting for Am., Inc. v. Andrade*,
  488 F. App'x 890 (5th Cir. 2012)……………...……………………..…….4, 9

**OTHER AUTHORITIES**

6 Cir. R. 26.1 ................................................................................................ ii

6 Cir. R. 30 ...................................................................................................13

Fed. R. App. P. 29 ..........................................................................................2

Fed. R. App. P. 30 ........................................................................................13

Fed. R. App. P. 32 ........................................................................................11

## IDENTITY, INTEREST, AND SOURCE OF AUTHORITY TO FILE OF *AMICUS CURIAE*

*Amicus curiae* has a significant and long-standing interest in this matter. The Public Interest Legal Foundation (the "Foundation") is a 501(c)(3) organization whose mission includes working to protect the fundamental right of citizens to vote and preserving election integrity across the country. The Foundation has sought to advance the public's interest in having elections free from unconstitutional burdens and discrimination. At the state level, this is best done by ensuring that state laws enacted by each state's legislative branch are constitutional. It is also done by monitoring judicial actions that intrude into the delegated responsibilities of the legislative branch. The separation of powers is foundational to elections that are fair and free from partisan manipulation.

The Foundation has extensive experience in election law litigation, and is involved in such cases throughout the nation. The Foundation has filed *amicus curiae* briefs in cases across the country on various election-related issues. *See, e.g.*, Brief of Public Interest Legal Foundation as *Amicus Curiae* in Support of Appellants, *Merrill v. Milligan*, Case Nos. 21-1086 and 21-1087 (U.S. 2022); Brief of *Amicus Curiae* Public Interest Legal Foundation in Support of Appellants, *Fisher v. Hargett*, 604 S.W.3d 381 (Tenn. 2020) (No. M2020-00831); Brief of American Civil Rights Union as *Amicus Curiae* in Support of Petitioner, *Husted v. A. Philip Randolph Institute*, 137 S. Ct. 2188 (2017) (No. 16-980) (filing on behalf of a client).

An *amicus* brief in this case is desirable because, due to the Foundation's involvement and following of cases in other jurisdictions, it is able to point out to the Court how arguments presented in this case are being used in other cases across the nation.

All parties consented to the filing of this brief via email to the Foundation; therefore, per Fed. R. App. Proc. 29(a)(2), the Foundation is permitted to file an *amicus* brief.

No counsel for a party in this case authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief. Finally, no person contributed money that was intended to fund preparing or submitting the brief, other than the *amicus curiae*.

## SUMMARY OF THE ARGUMENT

This case presents an opportunity for the Court to clarify an important aspect of the First Amendment. Plaintiff-Appellants ("Plaintiffs") here and across the country are attempting to change the standard for First Amendment jurisprudence by adding a new element to a speech claim: effectiveness. Plaintiffs, either by a mistaken understanding of the law, or by an intentional attempt to expand the law, argue that the First Amendment protects an action simply because it most effectively accomplishes their goals. Such an assertion is a perversion of First Amendment jurisprudence and should be rejected.

## ARGUMENT

The First Amendment does not confer a right to achieve the speaker's goals. Plaintiffs and their *amicus curiae* seem to have the mistaken notion that the First Amendment guarantees them the most effective means to accomplish their civic engagement objectives. This is simply not the case. And while the district court correctly found that "the First Amendment does not entail a right to achieve the speaker's goals (no matter how laudable) or to seek to achieve them in any way the speaker desires," Memorandum Opinion and Order (Sept. 23, 2020), RE 44, Page ID # 436 (citing *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 897 (5th Cir. 2012)), the argument presented by Appellants is being pressed by plaintiffs across America in similar suits. Therefore, to the extent this Court concludes that the First Amendment is even implicated here, clarification on this important point would be helpful.

Plaintiffs argue that one reason they should be able to hand out absentee ballot applications is their "voter engagement efforts are significantly more effective when they provide voters with all the information and requisite forms the voters need to participate." Appellants' Brief (filed Apr. 8, 2022), Document 29, 15. They go on to claim that "[f]or groups like Organizational Plaintiffs MCLC and Tennessee NAACP, which boast memberships of approximately 20,000 affiliate union members and 10,000 statewide members, respectively, including an absentee ballot

application in such mass mailings is crucial to effectively reaching and encouraging as many of their eligible members as possible to vote absentee." *Id.* at 16. The *amicus curiae* supporting Appellants also mentions the effectiveness of handing out applications in its First Amendment discussion. *See* Brief of Cato Institute as *Amicus Curiae* in Support of Plaintiffs-Appellants (filed Apr. 15, 2022), Document 32, 13-14.

This mistaken understanding of the First Amendment is not unique to this case. In a pending case in Virginia, plaintiffs complain that requiring full social security numbers on voter registration documents "severely hampers the ability of third-party entities . . . to run voter registration drives." *Democratic Party of Va.. et al. v. Brink, et al.*, Case No. 3:21-cv-00756-HEH (E.D. Va. Dec. 7, 2021), DE 1, Page ID # 46. In another case, plaintiffs argue that requiring ink signatures on applications for mail ballots in Texas is illegal because it "limits the ability of community organizers such as Plaintiffs to canvass voters who are eligible to vote by mail at their homes and to help these voters apply for mail ballots using iPads or other tablets." *La Union del Pueblo Entero, et al. v. Abbott, et al.*, Case No. 5:21-cv-00844-XR (W.D. Tex. Sept. 3, 2021), DE 1, Page ID # 31-32. And in Kansas, plaintiffs complain that a new law restricting them from mailing voters a partially completed advance ballot application (where the voter did not request such assistance) prohibits them "from employing their most effective means of

persuading voters to engage in the democratic process." *VoteAmerica, et al. v. Schwab, et al.*, Case 2:21-cv-02253-KHV-GEB (D. Kan. Jun. 2, 2021), DE 1, Page ID # 1-2.

As part of this increasingly aggressive legal position, plaintiffs throughout the United States are arguing that any law that results in *any* perceived limitation to the effectiveness of their civic engagement efforts violates their constitutional rights. But the First Amendment does not guarantee the ability to act in a manner most effective to one's mission. The First Amendment guarantees a right to *speech* – not a right to achieve one's goals.

The First Amendment does not pick winners and losers. *See Buckley v. Valeo*, 424 U.S. 1, 48-49 (1976) ("[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment[.]"). It does not distinguish among ideas. *See R. A. V. v. St. Paul*, 505 U.S. 377, 382 (1992) ("The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed.") (internal citations removed). "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S.

323, 339-40 (1974). The First Amendment allows speech and expression in general, and does not work to promote any particular speaker's goals.

*Meyer v. Grant*, 486 U.S. 414 (1988), certainly does not support such a proposition as plaintiffs here and elsewhere seem to suggest. In that case, the plaintiffs challenged the constitutionality of a statute that prohibited the use of paid circulators to obtain signatures on initiative petitions. After first explaining that the "circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change," *id.* at 421, the Court held that this "type of interactive communication concerning political change . . . is appropriately described as 'core political speech,'" *id.* at 421-22, and the fact that "'more burdensome' avenues of communication" are available "does not relieve [the] burden on First Amendment expression," *id.* at 424. In that vein, the Court held, "[t]he First Amendment protects [plaintiffs'] right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.*

*Meyer* cannot possibly be read so broadly as to insulate from the state's regulatory control whatever conduct an individual deems best suited to effectively convey a message in the election context.[1] Such an interpretation would undermine

---

[1] In any event, in contrast to a referendum or initiative petition, an absentee ballot application – which is simply an official state form – does not communicate any message whatsoever. Tennessee places no restrictions on who may speak about voter registration opportunities or available voting methods.

7

the Supreme Court's directive that states are endowed with substantial authority to regulate their elections. *See Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997) ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."); *Storer v. Brown*, 415 U.S. 724, 730 (1974) ( "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.")). Indeed, if individuals could circumvent the mechanics of election regulations and controls just because those restrictions were inconsistent with the purportedly "most effective" means of pursuing an electoral-related outcome, the state's essential authority in this area would be greatly blunted. The state also might be compelled to provide these individuals access to information that would facilitate their objective, a scenario that few would deem desirable. *See, e.g., Sheldon v. Grimes*, 18 F. Supp.3d 854, 859-60 (E.D. Ky. 2014) (rejecting an interpretation of the term "means" in *Meyer* that would allow plaintiffs to access otherwise restricted information on absentee voters because doing so would be the most effective way for plaintiffs to accomplish their campaign efforts). Further, such a holding would press the thumb on the scale of *Anderson-Burdick* balancing to the detriment of the state, if not render such test altogether useless.

The Fifth Circuit has opined on this misinterpretation of the First Amendment. In *Voting for Am., Inc. v. Andrade*, the plaintiffs "contend[ed] a First Amendment right not just to speak out or engage in 'expressive conduct' but also to succeed in their ultimate goal regardless of any other considerations." 488 F. App'x 890, 897 (5th Cir. 2012). The Fifth Circuit correctly rejected the argument:

> [T]he argument that Appellees' expressive activity, here the promotion of voter registration, is contingent on the "success" factor of *actually registering voters* is a novel interpretation of First Amendment doctrine. While the First Amendment protects the right to have and express political views, nowhere does it protect the right to ensure those views come to fruition. In this context of voter registration, a goal all parties here support, expansive protection would appear harmless. However, applied in other contexts, where the underlying speech is less universally accepted, the effects of such a rule prove otherwise. Imagine for example, the opposite situation, where an organization's goals are to *discourage* voting and voter registration. Again, the First Amendment protects the expression of such views. But freedom of expression cannot be used to protect that group's "right" to successfully achieve its expressive goals of preventing others from voting by throwing the registration cards away.

*Id.* at 897 n. 12 (emphasis in the original).

In this case, the district court properly held that the effectiveness of Plaintiffs' speech is not guaranteed under the First Amendment. Memorandum Opinion and Order (Sept. 23, 2020), RE 44, Page ID # 436 (citing *Andrade*, 488 F. App'x at 897) (incorporated into the final order, RE 56).  But this issue is constantly recurring in the lower courts and clear guidance would be welcome.  Regrettably, our country seems to be fighting its legal battles as much or more in the courts as it does in the

9

ballot box and traditional political arenas. A sound recitation of the proper scope of protections afforded by the First Amendment in this area – much more limited than the plaintiffs advocate here – would hopefully reduce the amount of litigation in this area and protect the First Amendment from being perverted into a positive right that guarantees effectiveness.

## CONCLUSION

For the reasons stated, the judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Charlotte M. Davis
CHARLOTTE M. DAVIS
Public Interest Legal Foundation
32 E. Washington Street, Suite 1675
Indianapolis, IN 46204
cdavis@publicinterestlegal.org
*Counsel for Amicus Curiae*


/s/ Bradley J. Schlozman
BRADLEY J. SCHLOZMAN
Hinkle Law Firm LLC
1617 N. Waterfront Pkwy, Ste 400
Wichita, KS 67206
bschlozman@hinklaw.com
*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE WITH RULE 32

I hereby certify that the foregoing Brief of *Amicus Curiae* Public Interest Legal Foundation complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(5), (6) and (7)(A). The foregoing brief contains 1,690 words of Times New Roman (14 point) proportional type. The word processing software used to prepare this brief was Microsoft Word 2013.

<u>/s/ Charlotte M. Davis</u>
CHARLOTTE M. DAVIS
cdavis@publicinterestlegal.org
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2022, a copy of the foregoing *Amicus Curiae* Brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic system.

<u>/s/ Charlotte M. Davis</u>
CHARLOTTE M. DAVIS
cdavis@publicinterestlegal.org
*Counsel for Amicus Curiae*

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Fed. R. App. P. 30(b) and Sixth Circuit Local Rule 30(g), the following filings from the district court's record are relevant documents for the purposes of this Brief.

| RECORD # | DESCRIPTION | Page ID # Range |
|---|---|---|
| 44 | Memorandum Opinion | 436 |

## CERTIFICATE OF DESIGNATION

I hereby certify that all of the above documents are properly made a part of the record in the district court.

/s/ Charlotte M. Davis  
CHARLOTTE M. DAVIS  
cdavis@publicinterestlegal.org  
*Counsel for Amicus Curiae*
