No. 22-5028

IN THE
𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤
**FOR THE SIXTH CIRCUIT**

JEFFREY LICHTENSTEIN, et al.,
Plaintiffs-Appellants,

v.

TRE HARGETT, in his official capacity as Secretary of State for the State of
Tennessee, et al.,
Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS
JEFFREY LICHTENSTEIN, ET AL.**

Jon M. Greenbaum
Ezra Rosenberg
Pooja Chaudhuri
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW

Danielle Lang
Molly E. Danahy
Jonathan Diaz
CAMPAIGN LEGAL CENTER

William H. Harbison
Lisa Katherine Helton
Christopher C. Sabis
SHERRARD ROE VOIGT & HARBISON

*Counsel for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, counsel for Plaintiffs-Appellants Jeffrey Lichtenstein, Memphis and West Tennessee AFL-CIO Central Labor Council, Tennessee State Conference of the NAACP, Memphis A. Philip Randolph Institute, and Free Hearts (hereinafter, "Plaintiffs") certify that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation, and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

By: /s/ *Danielle Lang*
Attorney for Plaintiffs

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .........................................................i

TABLE OF CONTENTS............................................................................. ii

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................2

    I.      The District Court Misapplied the Motion to Dismiss Standard................2

    II.     The First Amendment Protects Plaintiffs' Proposed Conduct...................3

        A.  The Complaint Plausibly Alleges that the Prohibited Conduct is Expressive...............................................................................................3

        B. The Complaint Plausibly Alleges that the Prohibited Conduct Is Core Political Speech ................................................................11

        C. The Complaint Plausibly Alleges that the Law Infringes on Plaintiffs' Freedom of Association Rights ...............................................14

    III.    The Law Fails Intermediate Scrutiny........................................................16

    IV.    The Law Fails Rational Basis ...................................................................20

CONCLUSION...................................................................................21

CERTIFICATE OF COMPLIANCE WITH RULE 32...........................................23

CERTIFICATE OF SERVICE ..........................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                **Page Nos.**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ............................................ 15, 17-20

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) ............................................ 16

*Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984) ................ 6-7

*Daunt v. Benson*, 999 F.3d 299 (6th Cir. 2021) ....................................................... 19

*Democracy North Carolina v. North Carolina State Board of Elections*,

   476 F. Supp. 3d 158 (M.D.N.C. 2020) ................................................................. 10

*Emily's List v. Federal Election Commission*, 581 F.3d 1 (D.C. Cir. 2009) .......... 12

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,

   901 F.3d 1235 (11th Cir. 2018) ........................................................................... 7

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) .......................... 3, 5

*Hernandez v. Woodard*, 714 F. Supp. 963 (N.D. Ill. 1989) .................................... 17

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ........................... 11, 17-18

*League of Women Voters of Florida v. Browning*, 863 F. Supp. 2d 1155

   (N.D. Fla. 2012) .................................................................................................. 15

*League of Women Voters v. Hargett*, 400 F. Supp. 3d 706

   (M.D. Tenn. 2019) ......................................................................................... 8-9, 16

*Lichtenstein v. Hargett*, 489 F. Supp. 3d 742 (M.D. Tenn. 2020) ........................... 5

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995) ............................. 12

*Meyer v. Grant*, 486 U.S. 414 (1988) ............................................................... 11-13

*Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010) .................................... 16

*Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548 (6th Cir. 2021) ..... 21

*Priorities USA v. Nessel*, 462 F. Supp. 3d 792 (E.D. Mich. 2020) ................. 10, 15

*Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249 (1999) ....................................... 14

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,

   547 U.S. 47 (2006) .............................................................................................. 16

*Sickles v. Campbell County, Kentucky*, 501 F.3d 726 (6th Cir. 2007) .................. 11

*Singleton v. Wulff*, 428 U.S. 106 (1976) ................................................... 14

*Spence v. State of Washington*, 418 U.S. 405 (1974) ........................................ 4, 6-7

*Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019) ........................ 11

*Texas v. Johnson*, 491 U.S. 397 (1989) ..................................................... 4, 6, 8, 14

*Tinker v. Des Moines Independent Community School District*,

   393 U.S. 503 (1969) ....................................................................... 7

*Thompson v. DeWine*, 976 F.3d 610 (6th Cir. 2020) ............................................ 20

*U.S. v. O'Brien*, 391 U.S. 367 (1968) .......................................................... 11, 14

*VoteAmerica v. Schwab*, No. CV 21-2253-KHV, 2021 WL 5918918

   (D. Kan. Dec. 15, 2021) ................................................................. 9-10

*Voting for America, Inc. v. Andrade*, 488 F. App'x. 890 (5th Cir. 2012) ............. 13

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ........................... 10

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015) ............................................ 20

## Regulations, Rules & Statutes                          Page Nos.

Federal Rule of Appellate Procedure 26.1 ..................................................... i

Federal Rule of Appellate Procedure 32(a)(5)(A) ............................................. 23

Federal Rule of Appellate Procedure 32(a)(6) ................................................ 23

Federal Rule of Appellate Procedure 32(a)(7) ................................................ 23

Federal Rule of Appellate Procedure 32(a)(7)(B) ............................................ 23

Federal Rule of Appellate Procedure 32(f) ................................................... 23

Sixth Circuit Rule 26.1 ....................................................................... i

**INTRODUCTION**

Plaintiffs have a straightforward political message to share with their fellow Tennesseans: "For eligible Tennesseans, often the best way to vote is absentee, which is easy and accessible. *Here is the absentee ballot application.* It is easy to use and will guarantee you a ballot. If you are eligible, we encourage you to fill it out and turn it in and we are here to help you if you need it." The challenged law ("the Law"), however, prohibits Plaintiffs from sharing that message. Plaintiffs allege that this message—and the necessary accompanying distribution of absentee ballot applications to that message—is expressive conduct and core political speech entitled to the First Amendment's most stringent protections. Yet, without offering any meaningful account as to why Plaintiffs' message and activity could be described as anything less than political expression, Defendants argue that Plaintiffs' engagement of voters in the absentee voting process is entitled to no First Amendment protection whatsoever. This Court should reject the dramatic diminution of First Amendment protections that Defendants propose.

Furthermore, the district court committed clear error in its dismissal of Plaintiffs' Complaint. Despite the fact-intensive inquiry required to determine whether conduct is expressive, the district court refused to accept Plaintiffs' factual allegations and drew inferences against Plaintiffs at every turn. In analyzing Plaintiffs' expression, the district court did not consider context as required by the

Supreme Court. Only by committing these errors could the district court, at the motion to dismiss stage, have reached the conclusion that distribution of absentee ballot applications as part of a voter engagement campaign is not expressive.

Finally, the district court failed to apply binding Supreme Court precedent categorizing analogous activities as core political speech subject to stringent scrutiny and did not address Plaintiffs' freedom of association claim at all. And, to justify the challenged law, the district court improperly relied on evidence outside the complaint and engaged in pure conjecture in Defendants' favor. To protect Plaintiffs' core First Amendment rights, and to correct these egregious errors in applying the motion to dismiss standard, this Court should reverse.

## ARGUMENT

### I.    The District Court Misapplied the Motion to Dismiss Standard.

While Defendants correctly note that the district court capably recited the motion to dismiss standard, *see* Def. Br. at 19, the court did not *apply* that standard. Instead, in granting Defendants' motion to dismiss, the district court improperly failed to accept Plaintiffs' allegations as true, *see, e.g.,* RE 56, PageID# 536 (labeling extensive factual allegations as "legal conclusions that will not be taken as true for purposes of ruling on Defendants Motion"); incorporated in full its prior decision under the preliminary injunction standard, *id.* ("fully incorporate[ing]" the preliminary injunction decision "for reasons of judicial efficiency"); considered

evidence outside of the record, *see, e.g.,* RE 44, PageID# 452-453 (citing liberally to Defendant Goins' declaration); and repeatedly drew inferences against Plaintiffs, *see e.g.,* RE 44, PageID# 427, 429-30 (dismissing the complaint based on its inference—drawn in favor of Defendants—that an observer might understand Plaintiffs' message to be "please throw this away"). *See also* Plaintiffs Br. at 11-12, 22-28. The district court certainly did not limit itself to determining whether "it appear[ed] beyond doubt that [Plaintiffs could] prove no set of facts in support of [their] claim which would entitle [them] to relief," as is proper at the motion to dismiss stage. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal citation omitted). The district court's failure to apply the correct motion to dismiss standard provides reason alone for reversal.

## II.  The First Amendment Protects Plaintiffs' Proposed Conduct.

### A.  The Complaint Plausibly Alleges that the Prohibited Conduct Is Expressive.

Plaintiffs—an individual, Jeffery Lichtenstein, and nonprofit civic engagement groups—seek to encourage their fellow Tennesseans, where eligible, to take advantage of the ease and accessibility of absentee voting to cast their ballot even when they cannot reach the polls. *See*, *e.g.*, RE 1 ¶¶ 6-12, 22, 24, 26-32, PageID# 2-6, 8-9, 9-11. As part of that advocacy, they seek to distribute absentee ballot applications. *Id*. Notwithstanding the commonplace nature of this type of get-out-the-vote activity during every election cycle across the country, the district court,

3

at the motion to dismiss stage, held that there the average observer of this activity would not understand Plaintiffs' distribution of absentee ballot applications as expressing their pro-voting—and pro-voting by mail—message but might instead interpret their message as "please throw this away." RE 44, PageID# 427, 429-30. In reaching this conclusion, the district court erred. It erred in its application of the First Amendment standard. It erred in its application of the motion to dismiss standard. And it erred in its interpretation of the unanimous body of caselaw finding this type of activity expressive. Nothing in Defendants' responding brief adequately addresses these fundamental errors.

Conduct is expressive where "an intent to convey a particularized message [is] present, and the likelihood [is] great that the message [will] be understood by those who viewed it." *Texas*, 491 U.S. at 404. To meet this standard, Plaintiffs must plead that the "nature of [the] activity, combined with the factual context and environment" demonstrates that the "activity [is] sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[]." *Spence v. Washington*, 418 U.S. 405, 409-10 (1974). Plaintiffs adequately alleged that their distribution of absentee ballot applications falls squarely within the protections of the First Amendment under this standard. RE 1 ¶¶ 6-12, 22, 24, 26-32, PageID# 2-6, 8-9, 9-11; *id.* ¶¶ 33-38, PageID# 11-12.

In response, Defendants, as did the district court, offer nothing but *ipse dixit* statements declaring Plaintiffs' conduct non-expressive: "The distribution of absentee-ballot applications, by contrast [to flag-burning], is not so understood." Def. Br. at 15; *see also id.* (citing the district court's similarly unsupported conclusion that "an observer would not have any particular reason to associate any specific message with the action of giving someone an absentee ballot application"). Critically, the district court did not require Defendants to show that there are no set of facts under which Plaintiffs' members could understand that Plaintiffs' distribution of an absentee ballot application conveys their particularized messages that "voting is important" or "vote absentee." RE 44, PageID# 427. Indeed, the district court found that there *were* circumstances under which even a casual observer would understand Plaintiffs' message in providing its members with an absentee ballot. *See Lichtenstein*, 489 F. Supp. at 768 ("True, the observer conceivably could speculate that the distributor intends to convey the message(s) Plaintiffs indicate they wish to convey.") This should have ended the Court's discussion under the motion to dismiss standard. *See Handy-Clay v. City of Memphis*, 695 F.3d at 538. Instead, the district court "fully incorporate[d]" its findings on expressive conduct at the preliminary injunction stage, RE 56, PageID# 536, in which it found no "great likelihood" that Plaintiffs' message would be understood and posited instead that "an observer could speculate that the message is

'please throw this away.'" RE 44, PageID# 427, 429-30. This turns the motion to dismiss standard on its head and is clear error.[1]

Further, Defendants attempt to avoid the Supreme Court's straightforward command that courts analyzing First Amendment claims must consider "the nature of [the] activity, combined with the factual context and environment in which it was undertaken." *Spence v. Washington*, 418 U.S. 405, 409-10 (1974). But Defendants' response is little more than "both [*Johnson* and *Spence*] dealt with the American flag." Def. Br. at 21. There is, of course, no special rule for considering context in cases involving the American flag. *See Clark v. Cmty. for Creative Non-Violence,*

---

[1] Defendants incorrectly argue that Plaintiffs' Complaint does not allege facts sufficient to show that "people who are handed blank absentee-ballot applications are likely to understand any particular message." Defs Br. at 19-20. To the contrary, the district court identified *eight paragraphs* from Plaintiffs' Complaint laying out factual allegations regarding the activities they wish to engage in to convey their political message to voters, including "discussing with their members the benefits of voting by mail, reminding eligible absentee voters about application and ballot submission deadlines and requirements, and following up with voters to ensure their ballots were received, cast and counted," "a key part of" which is "provid[ing] potential absentee voters with the blank absentee ballot applications that are available online from the state and county election commissions." RE 56, PageID# 534-35 (citing Compl. ¶¶ 22-30); *id.* (citing Compl. ¶ 26). Plaintiffs further alleged that providing the application to voters is "a much more effective way to encourage eligible voters to vote absentee than directing the voter to a website," i.e., a more effective way to *convey their message that eligible voters should vote absentee*, but that doing so is prohibited under the Law. *Id.* at PageID# 535 (citing Compl. ¶ 27). The district court was obligated to accept these allegations as true and draw reasonable inferences from them in favor of Plaintiffs. This includes the reasonable inference that voters would understand Plaintiffs' pro-voting message. *See* RE 1, ¶¶ 26-27, PageID# 9.

6

468 U.S. 288, 294, 104 S. Ct. 3065, 3069, 82 L. Ed. 2d 221 (1984) ("It is also true that a message may be delivered by conduct that is intended to be communicative and that, *in context*, would reasonably be understood by the viewer to be communicative.") (emphasis added). Indeed, *Spence* cited *Tinker*—a case about the wearing of black armbands, not the U.S. flag—for the core proposition that "the context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol." *Spence*, 418 U.S. at 410 (citing *Tinker v. Des Moines Independent Community Sch. Dist.*, 393 U.S. 503 (1969)).

Of course context matters. Indeed, "context [is what] separates the physical activity of walking from the expressive conduct associated with a picket line or a parade." *Ft. Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1241 (11th Cir. 2018) ("History may have been quite different had the Boston Tea Party been viewed as mere dislike for a certain brew and not a political protest against the taxation of the American colonies without representation."). The context of Plaintiffs' civic engagement activity—the Tennessee election cycles in which Plaintiffs participate as well as the increasingly political discourse surrounding use of absentee and mail voting—plainly imbues Plaintiffs' distribution of absentee ballot applications with expression. This is not, contrary to Defendants' contention, a context "manufactured by the plaintiffs." Def. Br. at 22.

Defendants cannot avoid binding Supreme Court precedent requiring this Court to consider context in determining whether Plaintiffs' conduct is inherently expressive. It plainly is. Indeed, neither the district court nor the Defendants even attempt to explain why recipients of absentee ballot applications *from* civic engagement groups *during* an ongoing election cycle are unlikely to understand Plaintiffs' pro-voting, pro-vote-by-mail message. Defendants certainly have offered no explanation as to why the district court was entitled to draw that negative inference at the motion to dismiss stage.

Defendants also fail to adequately address the growing mountain of unanimous precedent establishing that voter engagement and voter education activities—from petition circulation to voter registration to absentee voter engagement—are core political expression protected by the First Amendment. *See* Plaintiffs' Br. at 16-22. First, Defendants attempt to sideline *nine* cases, in a footnote, where federal courts have found that similar or identical voter education and engagement activities are protected by the First Amendment. Defendants suggest the Court ignore this precedent because the cases do not mechanically apply the *Texas v. Johnson* two-part test. This is not the compelling rejoinder that Defendants suggest it is. That these courts found the inherently expressive nature of the conduct obvious on its face—such that a lengthy recitation and application of *Texas v. Johnson* was wholly unnecessary—only reinforces Plaintiffs' claims. *See, e.g., League of Women*

*Voters v. Hargett*, 400 F. Supp. 3d at 720 (finding, "[a]s a matter of simple behavioral fact" that voter registration drive activities are "intertwined with speech and association"). In any event, the courts in each of these cases specifically found that the prohibited or regulated conduct—namely, distribution of and assistance with absentee ballot applications and voter registration forms—was protected First Amendment expression. *See* Plaintiffs Br. at 16-19; Defs. Br. at 15-16, fn. 2. Defendants fail to explain why these courts *all* got it wrong.

Defendants' remaining attempts to distinguish the overwhelming case law consist of only meager and inapposite factual distinctions. For example, Defendants seek to distinguish *VoteAmerica v. Schwab* on the grounds that the Kansas law "targeted only non-resident speakers and pro-mail-voting messages." Def. Br. at 16.[2] But, of course, the Law's targeting of non-resident speakers is not relevant to that court's determination that limits on distribution of absentee ballot applications "significantly inhibit[] communication with voters about proposed political change." 2021 WL 5918918 at * 17. And the district court found that a law limiting

---

[2] As Defendants note, *VoteAmerica* sought to distinguish the district court's opinion below based on the district court's failure to recognize the pro-voting message Plaintiffs seek to send alongside their distribution of absentee ballot applications. Defs. Br. at 16. But Plaintiffs properly pled their intent to communicate a pro-mail voting message. RE 1 ¶¶ 6-12, 22, 24, 26-32, PageID# 2-6, 8-9, 9-11. And one of the district court's errors was failing to view their proposed conduct in that context and allow them to develop a record demonstrating how distribution of absentee ballot applications would be part and parcel within their larger civic engagement speech. *See* Plaintiffs Br. at 26-28.

distribution of absentee ballot applications targets "private parties who are advocating for particular change—more voting by mail." *Id.* Thus, under *VoteAmerica*'s (correct) logic, Tennessee's law also targets "pro-mail-voting" messages. Likewise, Defendants repeat the district court's reasoning that *Democracy North Carolina v. North Carolina State Board of Elections*, 476 F. Supp. 3d 158, is distinguishable because the law at issue there concerned assisting voters in filling out absentee ballot applications, not distributing them. This hair-splitting "distinction" ignores that Plaintiffs cannot assist voters in filling out a form that they do not have in their possession. *See* Plaintiffs Br. At 17. It also ignores the *Democracy North Carolina* court's explicit reliance on the reasoning in *Priorities USA*, which challenged a restriction on distribution of absentee ballot applications. *See id.* at 223. Finally, as Defendants admit, in *Voting for America v. Steen*, Texas did not even contest that "some voter registration activities"—notably "distributing voter registration forms"—involve speech. But Defendants are wrong to suggest that the Fifth Circuit did not endorse this admission. To the contrary, the Fifth Circuit specifically held that "voter registration drives involve core protected speech" and that "[s]oliciting, urging, and persuading [a] citizen to vote are the canvasser's speech." 732 F.3d at 390.

**B.    The Complaint Plausibly Alleges that the Prohibited Conduct Is Core Political Speech.**

Plaintiffs plausibly alleged that their distribution of absentee ballot applications is not only expressive but, like petition circulation, is part and parcel of "the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *See* Plaintiffs Br. at 28. As Plaintiffs have explained, civic engagement and education on absentee voting "of necessity involve[] both the expression of a desire for [an engaged electorate] and a discussion of the merits of [voting by mail]" just as petition circulation "of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421-22.[3]

Defendants declare that "[c]irculating initiative petitions has little in common with handing out copies of a state-created absentee ballot application." Def. Br. at 25. But their distinctions once again fall flat.

---

[3] Defendants also cite a series of irrelevant cases for the general proposition that "[t]he First Amendment 'does not protect any conduct that at some point might have a *connection* to speech.'" Def. Br. at 24 (citing *Sickles v. Campbell Cnty., Ky.,* 501 F.3d 726, 734 (6th Cir. 2007)). *Sickles* was a case about Plaintiffs' ability to send money to inmates so that they could make phone calls. Defendants similarly cite *Holder v. Humanitarian Law Project*, 561 U.S. 1, (2010), a case about providing material support to foreign terrorist organizations, and *U.S. v. O'Brien*, 391 U.S. 367 (1968), about the destruction of Selective Service registration certificates. Finally, Defendants cite *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 772 (8th Cir. 2019), Def. Br. at 24, but the language they cite is from the dissent and the majority opinion found that the challenged was subject to strict scrutiny. Defendants' inability to find more applicable caselaw favoring their extreme position is telling.

Defendants lean heavily on the fact that absentee ballot application forms are state-created forms, *id.* But so are initiative petitions circulated for signature. And just as obtaining a voter's signature on a petition requires discussion of the merits of the proposed change, encouraging a voter to apply for an absentee ballot requires discussion of the merits of political participation in general and absentee voting in particular. *Contra* Def. Br. at 26 ("Nor does the act of handing someone a copy of the form 'of necessity' involve the expression of a desire for political change and a discussion of the merits of that change.").

Defendants also misunderstand *Meyer*'s application here by claiming that the Law would not "reduc[e] the total quantum of speech on a public issue." Def. Br. at 27.[4] Just as in *Meyer*, the Law "restricts access to the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication" assisting individuals to vote absentee. 486 U.S. 414 (1988). It is no answer to say that Plaintiffs can have more abstract absentee voting discussions

---

[4] Defendants again seek to distinguish a slew of applicable cases in a footnote based on this flawed contention. *See* Def. Br. at 27 fn. 4 ("Those cases, without exception, involved laws that –like the one at issue in *Meyer*—'reduc[ed] the total quantum of speech on a public issue.'"). But while Defendants are correct that the court in each of the cited cases found that the law would reduce the quantum of speech, Defendants fail to explain *how* or *why* the laws restricting voter registration activity and absentee ballot application distribution in the cited cases reduced speech but the challenged law does not. Nor do Defendants explain why the money spent on distribution of absentee ballot application should be protected by the First Amendment, *see Emily's List v. FEC*, 581 F.3d 1 (D.C. 2009), but the activity itself should not.

without distributing absentee ballot applications; petition circulators can also encourage voters to support a petition without collecting signatures. *See Meyer v. Grant*, 486 U.S. 414 (1988) ("That appellees remain free to employ other means to disseminate their ideas does not take their speech through petition circulators outside the bounds of First Amendment protection."). "The First Amendment protects [Plaintiffs'] right not only to advocate their cause but also select what they believe to be the most effective means for so doing." *Id.*[5]

Because the law directly restricts Plaintiffs' freedom of expression and association, this Court must apply the exacting scrutiny applied in *Meyer*. 486 U.S. at 420 ("We fully agree with the Court of Appeals' conclusion that this case involves a limitation on political expression subject to exacting scrutiny."). Under exacting scrutiny, this Court may uphold "the restriction only if it is narrowly tailored to serve

---

[5] Defendants and Amicus Public Interest Legal Foundation ("PILF") repeatedly mischaracterize the rights asserted by Plaintiffs in this matter. It is unremarkable that Plaintiffs seek to make their civic engagement efforts effective. But Plaintiffs are not asserting a right to ensure their efforts are successful. They do not assert a right to have voters fill out an absentee application, to submit that application, and to have it accepted. *Cf.* Br. of Amicus Curiae PILF at 9 (suggesting Plaintiffs seek to "succeed in their ultimate goal regardless of any other considerations") (quoting *Voting for America v. Andrade*, 488 F. App'x. 890, 897 (5th Cit. 2012)); Defs Br. at 38 (suggesting Plaintiffs are asserting "an imagined right to achieve the goal they advocate"). Instead, Plaintiffs simply assert their fundamental First Amendment right to choose the most effective means to convey their message that voting is important, including by providing voters the means to apply for an absentee ballot and encouraging them to use those means. *See Meyer*, 486 U.S. at 424.

an overriding state interest." *McIntyre*, 514 U.S. at 347.[6] Particularly at the motion to dismiss stage, Defendants cannot—and do not attempt to—clear this hurdle.

### C.    The Complaint Plausibly Alleges that the Law Infringes on Plaintiffs' Freedom of Association Rights.

As Defendants admit, the district court failed to even analyze Plaintiffs' properly alleged freedom of association claim. Defendants, too, failed to address Plaintiffs' freedom of association claim below and are only now, for the first time, raising arguments in opposition to that claim. *See, e.g.*, Defs' Mot. to Dismiss, RE 47, PageID# 469-483. "It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *see also Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253–54 (1999) ("Although respondent presents two alternative grounds for affirmance of the

---

[6] Defendants' belated reliance on *O'Brien* to support lesser scrutiny fails. *First*, Plaintiffs have plausibly alleged that the Law restricts core political speech and expression, *see supra* Parts II.A and II.B. Thus, Defendants are incorrect to argue the Law is "not related to expression." Def. Br. at 33 (citing *Johnson*, 491 U.S. at 403). Further, the Law is not, despite Defendants' contention, content-neutral. For example, Tennessee law allows Plaintiffs to communicate the message "Voting is important, if you are eligible and not already registered, you should register to vote. Here is a voter registration application, it is easy to use and will ensure you're able to vote on Election Day." It allows Plaintiffs to communicate the message "Today is Election Day. Voting is important and if you are eligible and have not already voted, you should vote. Here is your polling place information, voting is easy and quick and if you need assistance getting to the polls, we can help." But Tenn. § 2-6-202 (c)(3) prohibits Plaintiffs from saying "For eligible Tennesseans, often the best way to vote is absentee, which is easy and accessible. Here is the absentee ballot application. It is easy to use and will guarantee you a ballot."

decision below, we decline to address these claims at this stage in the litigation . . . [because] these claims do not appear to have been sufficiently developed below for us to assess them . . . ."). Defendants have not proffered any special circumstances meriting this Court's deviation from that general rule. As such, the district court should reverse the district court's dismissal of Plaintiffs' freedom of association claim for want of any reasoning supporting it.

If this Court reaches the merits of Plaintiffs' associational claim, Plaintiffs have plausibly alleged an associational claim that should not be rejected at the motion to dismiss stage. Plaintiffs cited extensive case law—to which Defendants provide no response—finding that voter engagement activities such as Plaintiffs' are quintessential associational activities in which "plaintiffs wish to speak and act collectively with others." Plaintiffs Br. at 31-2 (quoting *Browning II,* 863 F. Supp. 2d at 1158) (collecting cases); *see also Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 812 (E.D. Mich. 2020) (holding that distributing absentee ballot applications, among other vote-by-mail operations, "necessarily involve[s] political communication and association"). Indeed, because political engagement is a core associational activity, the Supreme Court has long recognized that electoral regulation almost always touches upon associational rights. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983) (regulation of electoral activity "inevitably affects—at least to some degree—the individual's right to vote and his right to

associate with others for political ends"). Here, where the Law specifically denies Plaintiffs and their members their chosen means to engage each other and their community with the political process, the associational infringement is direct, not tangential.

In response, Defendant relies on two inapplicable cases—*Miller* and *Rumsfeld*—to argue that the Law does not "interfere with group membership." Def. Br. at 29. Not so. As Plaintiffs' complaint makes clear, civic engagement activity is the precise means by which Plaintiffs maintain engagement with their members, grow their membership, connect with community members, and, ultimately, "associate with others for the advancement of [their] common beliefs." *League of Women Voters*, 400 F. Supp. 3d at 723–24; *see also* Plaintiffs' Br. at 32. In other words, Plaintiffs' voter engagement activity is core to how they associate. Plaintiffs have plainly alleged that the Law impairs their ability to associate with their membership and their community. And the Supreme Court has long held that courts must "give deference to an association's view of what would impair its expression." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653 (2000).

## III.    The Law Fails Intermediate Scrutiny.

Defendants contend that, at most, the Law is subject to intermediate scrutiny, under which "a content-neutral regulation will be sustained . . . if it advances important governmental interests unrelated to the suppression of free speech and

does not burden substantially more speech than necessary to further those interests"
if the regulation involves speech, *see* Defs Br. at 35 (quoting *Holder v. Humanitarian
L. Project*, 561 U.S. 1, 26-27 (2010)), or in which the court must weigh the burden
imposed by the law against "the precise interests put forward by the State as
justifications for the burden imposed by its rule," *id.* at 34 (quoting *Anderson v.
Celebrezze*, 460 U.S. 780, 789 (1983). But even if Defendants were correct in
suggesting this Court apply intermediate scrutiny (*they are not*), dismissal was
improper.

As Plaintiffs have already explained, and Defendants failed to rebut, Plaintiffs
have plausibly alleged that Tennessee's felony prohibition on the distribution of
absentee ballot applications imposes at least a moderate burden on their First
Amendment rights, that it implicates a broad category of activity, and that Plaintiffs
have no alternative means to convey their message or to provide voters the forms
they need to ensure access to absentee ballots. Plaintiffs' Br. at 38 (citing *e.g.,
Hernandez v. Woodard*, 714 F. Supp. 963, 973 (N.D. Ill. 1989) ("Where groups,
formal or informal, seek to advance their goals through the electoral process,
regulations preventing their members from [engaging absentee voters] impair their
ability effectively to organize and make their voices heard.")).

Meanwhile, while Defendants assert certain state interests and contend that
the Law's burdens are minimal, they never explain how the Law "does not burden

more speech than necessary to further" the state's asserted interests nor do they weigh the burdens imposed by the law "against the precise interests put forward by the State." *See id*. at 34-35. Indeed, Defendants have failed to explain how— accepting all Plaintiffs' factual allegations as true and drawing all inference in favor of Plaintiffs—the Law is even minimally tailored to the State's asserted interests. The blanket criminal prohibition on absentee ballot distribution does not ensure that "the voter requested the application," Def. Br. at 35, because it makes giving an application to a voter *at their request* a felony. It does not ensure that voters are provided the "correct form," *id.*, because it makes distribution of the correct form a felony. It does not ensure that "the application is not pre-filled," *id.*, because it prohibits distribution of blank applications, not just pre-filled applications. It does not ensure that "it is clear to the voter that the application is being provided by the government," *id.*, because it goes far beyond requiring disclosure of the source of the form or distributor. And it does not ensure that "the application does not come with any incorrect or misleading instructions," *id.*, because it does not impose any limits on the instructions that can be provided to voters completing an absentee ballot, which can be completed by any person once the voter obtains the application. In short, Defendants do not explain how the Law serves the *precise* interests it asserts, *Anderson*, 460 U.S. at 789 nor do they explain how the Law achieves those interests without "burden[ing] substantially more speech than necessary." *Holder*,

561 U.S. at 26-27. As such, Defendants have failed to show that the Law withstands intermediate scrutiny.

Nor did the district court's analysis fare any better. Indeed, in weighing the state's asserted interests, the district court clearly erred by incorporating its ruling on the preliminary injunction motion in full, *see* RE 56, PageID# 536 n.5, and therefore necessarily relying on evidence that goes beyond the complaint. *See* RE 44, PageID# 452-453 (citing liberally from the declaration of Defendant Goins and finding that "Defendants, *via Defendant Goins' Declaration* have easily established a plausible connection between prohibiting the distribution of absentee-ballot requests and both increasing election integrity and decreasing voter confusion") (emphasis added). The district court even went so far as to hypothesize justifications for the law beyond what the state asserted. *See id*. PageID# 453-44 (asserting a vague warning about the potential for "unscrupulous actors" to impair election integrity as grounds for connecting the law to the asserted interests).[7] Further, because Plaintiffs

---

[7] Though the district court attempted to hand-wave this issue away by asserting that these "state interests . . . can easily 'be gleaned from the face of the challenged law.'" RE 56, Page ID 538. But the only justification for the Law that can be "gleaned from its face" is found at Tenn. Stat. § 2-6-101: "The purpose of this chapter is to provide a means for qualified voters to cast their votes when they would otherwise be unable to vote. The district court cited *Daunt v. Benson*, 999 F.3d 299, 313 (6th Cir. 2021) in support of its resolution of these issues at the motion to dismiss stage but *Daunt* provides no such support. In *Daunt*, this court found that dismissal on the pleadings was warranted *despite* the fact that *Anderson-Burdick* typically requires a "fact-intensive inquiry." 999 F.3d at 313. It did so because the plaintiffs *conceded* there were no facts at issue, and the "alleged severity of the burdens [could] be gleaned

have plausibly alleged that the First Amendment requires a tighter fit between Defendants' asserted interests and the challenged law, the court erred in denying Plaintiffs the opportunity to test those assertions, including Defendant Goins' declaration, through discovery. As such, the district court erred in dismissing Plaintiffs' Complaint.

## IV.    The Law Fails Rational Basis.

In the alternative, Defendants assert that the Law is subject to rational-basis review under the *Anderson-Burdick* framework because it "imposes only reasonable, nondiscriminatory restrictions." *Id*. at 34 (quoting *Thompson*, 976 F.3d 610, 615 (6th Cir. 2020). But even assuming the restrictions imposed by the Law are minimal and that rational basis applies—they are not and it does not, *see supra* Parts II, III—the prohibition simply cannot be considered rational. It is not rational to prohibit distribution of absentee ballot applications at a voter's request to ensure that they are distributed only when the voter requests an application. It is not rational to prohibit the distribution of a government form to ensure that only the government form is

---

from the face of the challenged law" and "weighed against the asserted state interests." *Id*.  It is unremarkable that a court will typically be able to determine what conduct is prohibited from the face of a law with relative ease. But the district court—and Defendants—have it backwards in saying that a court may, at the motion to dismiss stage, look beyond the allegations in the complaint to infer or hypothesize interests in favor of the state that might justify the law at issue. *Cf. Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (at the motion to dismiss stage courts must "draw all reasonable inferences in favor of the [plaintiff]").

distributed. And it is not rational to make the distribution of an absentee ballot application—which is widely available online to those with internet access—a felony offense. *See* Mem. Op. and Order, ECF 66 at 9 n. 9, *Memphis A. Philip Randolph Institute v. Hargett*, No. 3:20-cv-00374, (M.D. Tenn. Aug. 11, 2020) ("With the application now being available online, one may reasonably wonder why it is still a felony (even absent nefarious surrounding circumstances)).

## CONCLUSION

For the forgoing reasons, and those stated in Plaintiffs' opening brief, the Court should reverse the district court's decision and enter an order denying the motion to dismiss.


May 31, 2022                                    Respectfully submitted,

                                               /s/ *Danielle Lang*

Jon Greenbaum                          Danielle Lang
Ezra Rosenberg                         Molly E. Danahy
Pooja Chaudhuri                        Jonathan Diaz
Lawyers' Committee for Civil           Campaign Legal Center
Rights Under Law 1500 K Street         1101 14th St. NW, Suite 400
NW Suite 900                           Washington, DC 20005
Washington, DC 20005                   Tel.: (202) 736-2200
Tel.: (202) 662-8600                   dlang@campaignlegal.org
jgreenbaum@lawyerscommittee.org        mdanahy@campaignlegal.org
erosenberg@lawyerscommittee.org        jdiaz@campaignlegal.org
pchaudhuri@lawyerscommittee.org

William L. Harbison (No. 7012)
Lisa K. Helton (No. 23684)
Christopher C. Sabis (No. 30032)
Christina R.B. López (No. 37282)
Sherrard, Roe, Voigt & Harbison, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Phone: (615) 742-4200
Fax: (615) 742 4539
bharbison@srvhlaw.com
lhelton@srvhlaw.com
csabis@srvhlaw.com
clopez@srvhlaw.com

**CERTIFICATE OF COMPLIANCE WITH RULE 32**
**Certificate of Compliance with Type-Volume Limitation, Typeface**
**Requirements, and Type Style Requirements.**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because the brief contains 5,452 words, excluding the parts of the brief exempted by Rule 32(f). *See* Fed. R. App. P. 32(a)(7)(B).

This brief complies with the typeface requirements of Rule 32(a)(5)(A) and the type style requirements of Rule 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

/s/ *Danielle Lang*
Attorney for Plaintiffs-Appellants

**CERTIFICATE OF SERVICE**

The undersigned herby certifies that the Brief of Plaintiffs-Appellants was electronically filed with the Sixth Circuit Court of Appeals on May 31, 2022. The Brief of Plaintiffs-Appellants was served by ECF on May 31, 2022, on counsel for Appellees. The addresses for counsel for Appellees are:

Janet Kleinfelter
Andrew B. Campbell
Alexander Rieger
Matthew D. Cloutier
Office of the Tennessee Attorney General
301 6th Ave. N.
Nashville, Tennessee 37243
Janet.kleinfelter@ag.tn.gov
Andrew.campbell@ag.tn.gov
Alex.rieger@ag.tn.gov
Matt.cloutier@ag.tn.gov
*Counsel for Defendants*

/s/ *Danielle Lang*
Attorney for Plaintiffs-Appellants

24